1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   MARILYN R. MORIARTY, SB# 89818
2         E-mail:  moriarty@lbbslaw.com
   JULIE R. DANN, SB# 206650
3         E-mail:  dann@lbbslaw.com
   701 B Street, Suite 1900
4  San Diego, California 92101
   Telephone: 619.233.1006
5  Facsimile: 619.233.8627

6  Attorneys for Defendant NADER RIFAI

7

8                   UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 CRITICAL CARE DIAGNOSTICS, INC., DBA CRITICAL DIAGNOSTICS, a Delaware Corporation, | **CASE NO.: 3:13-cv-01308-L (WMC)** |
| 13          Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16** |
| 14     vs. | |
| 15 AMERICAN ASSOCIATION FOR CLINICAL CHEMISTRY, INC., a New York non-profit corporation, NADER RIFAI, an individual, LU Q. CHEN, an individual, JAMES A. DE LEMOS, an individual, SANDEEP R. DAS, an individual, COLBY R. AYERS, an individual; ANAND ROHATGI, an individual and DOES 1 to 100, inclusive, | |
| | **[Filed concurrently with Defendant Nader Rifai's Notice of Motion to Strike, Declaration of Nader Rifai, Request for Judicial Notice and Declaration of Julie R. Dann in Support Thereof]** |
| 21          Defendants. | **Judge:  Honorable M. James Lorenz** **Courtroom:  5B** |
| 22 | **Date:    August 12, 2013** **Time:    10:30 a.m.** |
| 24 | **DEMAND FOR JURY TRIAL** |
| 25 | Trial Date:     None Set |
| 26 | |

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND FACTS ......................................................................... 2

      A.    Plaintiff Critical Care Diagnostics' Presage® ST2 Assay ..................... 2

      B.    Other Assays ....................................................................... 3

      C.    Nader Rifai and the American Association for CLINICAL
            CHEMISTRY, a Peer-Reviewed Scientific Journal ............................. 4

      D.    The Author Defendants and Their Article ...................................... 5

      E.    Events Following the Publication of the Article at Issue .................... 6

      F.    Plaintiff's Contentions ......................................................... 6

III.  ARGUMENT AND AUTHORITY ............................................................. 7

      A.    Plaintiff's Causes of Action Against Nader Rifai Arise from
            Activities Subject to California's Anti-SLAPP Statute Protection ........ 7

            1.    The Statements Were Made in a Place Open to the Public
                  or a Public Forum ...................................................... 9

            2.    The Conduct at Issue Involved Speech in Connection With
                  a Public Issue or an Issue of Public Interest ....................... 9

      B.    Plaintiff Cannot Establish a Probability of Prevailing on Any
            Claim Against Dr. Rifai ............................................... 11

      C.    Plaintiff's Purported Libel Per Se Cause of Action Fails ................. 13

      D.    Plaintiff's Purported Trade Libel Cause of Action Fails ................. 13

      E.    Plaintiff's Purported Libel Per Quod Cause of Action Fails ............. 15

      F.    Defenses Bar Plaintiff's Action Against Dr. Rifai ....................... 16

            1.    Truth is a Defense and Opinions are Not Actionable ................. 16

            2.    The Common Interest Privilege Applies ............................. 19

            3.    The Fair and True Privilege Applies ............................... 19

            4.    Plaintiff is a Public Figure or is a Limited Public Figure ......... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

G.   Plaintiff is Unable to Prove Malice.........................................................21

H.   Plaintiff Cannot Prevail on Its Section 17200 Cause of Action ...........24

I.   Defendant Is Entitled to Recover Its Costs and Attorneys' Fees..........25

**IV.   CONCLUSION** ...............................................................................................25



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## CASES

### Federal

*Chaiken v. VV Publ. Corp.,*
    907 F. Supp. 689 (S.D.N.Y. 1995) .................................................................. 12

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ....................................................................................... 22

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    63 F. Supp. 2d 1127 (N.D. Cal. 1999) ............................................................. 7

*Harkonen v. Fleming,*
    880 F. Supp. 2d 1071 (N.D. Cal. 2012) ........................................ 8, 10, 19, 22

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ...................................................................... 17

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013) ............................................................ 7, 20, 22

*McMillan III v. Togua Regional Office Dept. of Veteran Affairs,*
    294 F. Supp. 2d 305 (E.D.N.Y. 2003) ............................................................ 1

*Metabolife Int'l, Inc. v. Wornick,*
    264 F.3d 832 (9th Cir. 2013) .......................................................................... 8

*Moreau v. Daily Indep.,*
    2013 U.S. Dist. LEXIS 3059 (E.D. Cal. 2013) ............................................... 9

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (U.S. 1964) ............................................................. 1, 20, 21, 23

*ONY, Inc. v. Cornerstone Therapeutics, Inc.,*
    2013 U.S. App. LEXIS 13067 (2d Cir. 2013) ......................................... 18, 19

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) ........................................................................ 17

*Philadelphia Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) ...................................................................................... 16

*Piping Rock Partners, Inc. v. David Lerner Assocs.,*
    2013 U.S. Dist. LEXIS 70660 (N.D. 2013) .................................................. 14

*Rogers v. Home Shopping Network, Inc.,*
    57 F. Supp. 2d 973 (C.D. Cal. 1999) ............................................................ 25

*Ross v. Midwest Communications, Inc.,*
    870 F.2d 271 (5th Cir. Tex. 1989) ................................................................ 22

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Sweezy v. New Hampshire,*
   354 U.S. 234 (U.S. 1975) ........................................................................ 1

*Underwager v. Salter,*
   22 F.3d 730 (7th Cir.Wis. 1994) ........................................................... 1

*United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc.,*
   404 F.2d 706 (9th Cir. 1968) ............................................................... 10

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
   190 F.3d 963 (9th Cir. 1999) ................................................................. 8

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 7

*ZL Techs., Inc. v. Gartner, Inc.,*
   709 F. Supp. 2d 789 (N.D. Cal. 2010) ............................................... 16

### State

*Ampex Corp. v. Cargle,*
   128 Cal. App. 4th 1569 (2005) ...................................................... 20, 22

*Barrett v. Rosenthal,*
   40 Cal. 4th 33 (2006) ............................................................................ 9

*Biggins v. Hanson,*
   252 Cal. App. 2d 16 (1967) ................................................................. 15

*Bindrim v. Mitchell,*
   92 Cal. App. 3d 61 (1979) ................................................................... 22

*Braun v. Chronicle Publishing Co.,*
   52 Cal. App. 4th 1036 (1997) ............................................................... 7

*Brown v. Kelly Broadcasting Co.,*
   48 Cal. 3d 711 (1989) ......................................................................... 21

*Chaker v. Mateo,*
   209 Cal. App. 4th 1138 (2012) ............................................................. 9

*ComputerXpress, Inc. v. Jackson,*
   93 Cal. App. 4th 993 (2001) ..................................................... 13, 14, 16

*Damon v. Ocean Hills Journalism Club,*
   85 Cal. App. 4th 468 (2000) ................................................................. 9

*Dong v. Board of Trustees,*
   191 Cal. App. 3d 1572 (1987) ............................................................ 17

*DuPont Merck Pharmaceutical Co. v. Sup. Ct,*
   78 Cal. App. 4th 562 (2000) ................................................................. 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Erlich v. Etner,*
    224 Cal. App. 2d 69 (1964) ................................................................ 13

*Fox Searchlight Pictures v. Paladino,*
    89 Cal. App. 4th 294 (2001) ................................................................ 8

*Gantry Constr. Co. v. American Pipe & Constr. Co.,*
    49 Cal. App. 3d 186 (1975) ................................................................ 16

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007) ................................................................ 20

*Institute of Athletic Motivation v. University of Illinois,*
    114 Cal. App. 3d 1 (1980) ................................................................ 19, 20

*Jensen v. Hewlett-Packard Co.,*
    14 Cal. App. 4th 958 (1993) ................................................................ 16

*Katz v. Rosen,*
    48 Cal. App. 3d 1032 (1975) ................................................................ 19

*Leonardini v. Shell Oil Co.,*
    216 Cal. App. 3d 547 (1990) ................................................................ 14, 15

*Lundquist v. Reusser,*
    7 Cal. 4th 1193 (1994) ................................................................ 19

*Mann v. Quality Old Time Service, Inc.,*
    120 Cal. App. 4th 90 (2004) ................................................................ 11, 14

*McGarry v. Univ. of San Diego,*
    154 Cal. App. 4th 97 (2007) ................................................................ 12

*Melaleuca, Inc. v. Clark,*
    66 Cal. App. 4th 1344 (1998) ................................................................ 14, 17

*Nagel v. Twin Laboratories, Inc.,*
    109 Cal. App. 4th 39 (2003) ................................................................ 9

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002) ................................................................ 8

*Nichols v. Great American Ins. Companies,*
    169 Cal. App. 3d. 776 (1985) ................................................................ 13

*Nizam-Aldine v. City of Oakland,*
    47 Cal. App. 4th 364 (1996) ................................................................ 21

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027 (2008) ................................................................ 9

*Polygram Records v. Sup. Ct.,*
    170 Cal. App. 3d 543 (1985) ................................................................ 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Reader's Digest Assn. v. Superior Court,*
   37 Cal. 3d 244 (1984).................................................................22

*Rivera v. First DataBank, Inc.,*
   187 Cal. App. 4th 709 (2010)........................................................9

*See, Bernardo v. Planned Parenthood Federation of America,*
   115 Cal. App. 4th 322 (2004)...............................................10, 24

*See, Du Charme v. International Brotherhood of Electrical Workers,*
   110 Cal. App. 4th 107 (2003).......................................................11

*Stewart v. Rolling Stone LLC,*
   181 Cal. App. 4th 664 (2010)................................................10, 24

*Taus v. Loftus,*
   40 Cal. 4th 683 (2007)................................................................19

*Vegod Corp. v. Am. Broad. Cos.,*
   25 Cal. 3d 763 (1979)................................................................20

*Walker v. Kiousis,*
   93 Cal. App. 4th 1432 (2001).......................................................22

*Wong v. Jing,*
   189 Cal. App. 4th 1354 (2010).....................................................12

## STATUTES

21 U.S.C. §331.................................................................................14

21 U.S.C. §333.................................................................................14

21 U.S.C. §352.................................................................................14

Cal. Bus. & Prof. Code § 17200 ..............................................1, 11, 24

Cal. Civ. Code, §44..........................................................................13

Cal. Civ. Code, §45....................................................................13, 15

Cal. Civ. Code, §47..........................................................................19

Cal. Civ. Proc. Code §425.16..........................7, 8, 9, 11,19, 22, 23, 25

Code Civ. Proc., §425.17..................................................................24

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

# I.    __INTRODUCTION__

Freedom of expression needs "breathing space to survive."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (U.S. 1964).  This principle applies to academic and scientific debate because scholarship cannot flourish in an atmosphere of suspicion and distrust.  See *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (U.S. 1975).  "As in political controversy, science is, above all, an adversary process in which ideas do battle … Any unnecessary intervention by the courts in the complex debate and interplay among scientists that compromises modern science can only distort and confuse."  *McMillan III v. Togua Regional Office Dept. of Veteran Affairs*, 294 F. Supp. 2d 305, 317 (E.D.N.Y. 2003) (citations omitted).  Scientific controversies "must be settled by the methods of science rather than by the methods of litigation."  *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir.Wis. 1994).  "More papers, more discussion, better data, and more satisfactory models – not larger awards of damages – mark the path toward superior understanding of the world around us."  *Id*.

This matter arises out of a peer-reviewed scientific research article entitled "Soluble ST2 Is Associated with All-Cause and Cardiovascular Mortality in a Population-Based Cohort: The Dallas Heart Study" (herein "the Article") published in CLINICAL CHEMISTRY, the American Association for Clinical Chemistry's (herein "AACC") scientific journal.  Plaintiff Critical Care Diagnostics, Inc.'s (herein also referred to as "Critical Diagnostics") complaint alleges four causes of action against all defendants, including Defendant Nader Rifai, Ph.D., for: 1) Libel Per Se; 2) Libel Per Quod; 3) Trade Libel; and 4) Unlawful, Fraudulent and/or Unfair Business Practices under California Business and Professions Code section 17200*, et seq,* related to the publication of the Article in CLINICAL CHEMISTRY.

Defendant Nader Rifai, Ph.D., is the Editor-in-Chief of CLINICAL CHEMISTRY.  His involvement with the Article was limited.  Dr. Rifai reviewed the manuscript after it was received by CLINICAL CHEMISTRY to determine whether it

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  should be immediately rejected or subject to peer review.  He assigned the

2  manuscript to an Associate Editor who then handled the peer review process.  Dr.

3  Rifai had no further involvement with the manuscript before it was published as an

4  article in CLINICAL CHEMISTRY.

5      Dr. Rifai brings this motion to prevent plaintiff from pursuing a lawsuit

6  chilling freedom of expression.  Plaintiff clearly pursues a lawsuit against Dr. Rifai

7  where no liability on the part of Dr. Rifai exists.  Moreover, plaintiff seeks an

8  inappropriate and unwarranted censorship of the Article.  Plaintiff attacks Dr. Rifai

9  for conduct in furtherance of the exercise of the constitutional right of free speech in

10  connection with a public issue or an issue of public interest.  Plaintiff also asks the

11  court to step into the peer review process and issue an injunction determining that

12  the quality of the scholarship of the Article and the Article's research is not fit for

13  public dissemination.  Plaintiff resorts to the court, rather than to traditional methods

14  of science, to challenge the scientific debate regarding the article.  Consequently,

15  plaintiff requests that the court, not scientists, decide the outcome of a disputed

16  scientific theory.

17      This is not and should not be the role of the court.  Peer review, not judicial

18  review, should decide the outcome of cardiac biomarker scientific research.  The

19  right to publish statements expressing opinions and ideas about scientific research is

20  a fundamental right afforded by the First Amendment.  Lawsuits such as this one

21  threaten the free exchange of scholarly thought and scientific debate.  California's

22  anti-SLAPP law bars lawsuits such as the present matter.  Thus, Dr. Rifai

23  respectfully asks the court to dismiss the entire present lawsuit against him.

24  **II.    BACKGROUND FACTS**

25      **A.    Plaintiff Critical Care Diagnostics' Presage® ST2 Assay**

26      According to the complaint, Plaintiff Critical Care Diagnostics, Inc. is a

27  biomarker company focused on cardiovascular diseases and is the holder of some of

28  the patents surrounding ST2 protein.  Complaint, ¶ 15, Def.'s Ex. 13, p. 36; see also

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Def.'s Request for Judicial Notice ("RFJN") ¶ 11.  Plaintiff produces the ST2 Assay

2  (herein "Presage® ST2 Assay") used to measure the level of ST2 protein in blood.

3  Complaint, ¶ 17, Def.'s Ex. 13, p. 36.  Plaintiff contends that the Presage® ST2

4  Assay is the only United States Food and Drug Association ("FDA") cleared ST2

5  assay.  Complaint, ¶ 18, Def.'s Ex. 13, p. 36.   Plaintiff does not contend that it has

6  an FDA approved product for evaluating ST2 as a cardiac biomarker in the general

7  population.  The FDA clearance for the Presage® ST2 Assay is limited.  The assay

8  is only "to be used in conjunction with clinical evaluation as an aid in assessing the

9  prognosis of patients diagnosed with chronic heart failure."  501(k) Summary,

10  Def.'s Ex. 14, p. 47; see also RFJN ¶ 12.

11      **B.     Other Assays**

12      The complaint alleges that Alere Inc. has also developed an ST2 assay,

13  ("Alere ST2 Assay") but it is not commercially available.  Complaint, ¶ 19, Def.'s

14  Ex. 13, p. 36.  Alere, Inc., allegedly also has FDA approved cardiac biomarkers,

15  such as the Alere BNP assay and the Alere NT-proBNP  ("Alere BNP Assays"),

16  which are alleged to be "in direct competition with the Presage® ST2 Assay" and

17  are commercially available.  Complaint, ¶ 20, Def.'s Ex. 13, p. 36.  According to the

18  complaint, the difference between the cardiac biomarkers commercially available,

19  namely the Alere BNP Assays and the Presage® ST2 Assay, is that the Presage®

20  ST2 Assay measures the level of the ST2 protein in blood.  Complaint, ¶ 21, Def.'s

21  Ex. 13, p. 37.   Essentially, plaintiff contends that the Alere BNP Assays and the

22  Presage® ST2 Assay differ in the following respects: 1) the Presage® ST2 Assay is

23  more sensitive and accurate in determining the prognosis of heart failure; and 2) the

24  information "about disease status of a patient provided by ST2" is not available by

25  using any other cardiac biomarker other than the Presage® ST2 Assay.  Complaint,

26  ¶ 21, Def.'s Ex. 13, p. 37.

27      "Cardiac protein biomarkers and cardiac hormone biomarkers are believed to

28  show distinct aspects of pathophysiology."  Anand Rohatgi Decl. ¶ 10 attached as

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Def.'s Ex. 17, pp. 67-68.  The Presage® ST2 assay for cardiac protein and the BNP

2  assay for cardiac hormones are "not medically competitive alternative products from

3  the patient's standpoint."  Rohatgi Decl., ¶ 10, Def. Ex. 17, p. 68.

        C.      **Nader Rifai and the American Association for CLINICAL**

5                          **CHEMISTRY, a Peer-Reviewed Scientific Journal**

6        Defendant Nader Rifai, Ph.D., is the Editor-in-Chief of CLINICAL

7  CHEMISTRY, a journal of the American Association for Clinical Chemistry, Inc.

8  (herein "AACC").  Declaration of Nader Rifai ("Rifai Decl."), ¶ 2.  AACC, a

9  nonprofit organization, is an international scientific/medical society of clinical

10  laboratory professionals, physicians, research scientists and other individuals

11  involved with clinical chemistry and related disciplines.  *Id.*  CLINICAL CHEMISTRY

12  is a leading peer-reviewed publication in the field of clinical laboratory science.

13  Complaint, ¶¶ 25, 27, Def.'s Ex. 13, p. 37; Rifai Decl., ¶ 2.  As a peer-reviewed

14  journal, independent professionals, namely scientists and scholars, review the

15  journal's articles and research prior to publication.  Complaint, ¶ 16, Def.'s Ex. 13,

16  p. 36; see also Rifai Decl., ¶ 16.

17        Dr. Rifai is not an employee of AACC.  Rifai Decl., ¶ 3.  Dr. Rifai's specialty

18  is not research of soluble ST2.  *Id.*, ¶ 5.  When the manuscript of the Article first

19  came to the journal, Dr. Rifai screened it and assigned it to an Associate Editor to

20  undergo the peer review process.  *Id.*, ¶¶ 6, 17-19, 21.  Until being contacted by

21  plaintiff following the Article's publication, Dr. Rifai had no other involvement with

22  the manuscript or Article.  *Id.*, ¶ 20.  At no time did Dr. Rifai, ever intend to harm

23  the reputation of or otherwise damage plaintiff .  He had no reason to suspect that

24  the Article would allegedly disparage plaintiff or plaintiff's product.  Rifai Decl., ¶¶

25  22-25.

26        On or about December 7, 2012, the Article, detailing research regarding ST2,

27  was published on CLINICAL CHEMISTRY's website and in its March 2013 edition,

28  following peer review.  Def.'s Ex. 1, pp. 1-11; see also Rifai Decl., ¶¶ 13-15.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                      4                      3:13-cv-01308-L (WMC)

D.     **The Author Defendants and Their Article**

Defendants Lu Q. Chen, James A. De Lemos, Sandeep R. Das, Colby R. Ayers and Anand Rohatgi (herein "Author Defendants") are the credited authors of the Article.  Complaint, ¶¶ 4-8, Def.'s Ex. 13, p. 35; see also Def.'s Ex. 1, p. 1.  The research was conducted using a population sample from Texas, namely Dallas County residents.  Def.'s Ex. 1, p. 2 "Materials and Methods, ¶¶ 1-3; see also Lu Q. Chen Decl., ¶¶ 6-7, attached as Def.'s Ex. 16, p. 61;  James de Lemos Decl., ¶¶  6-10, attached as Def.'s Ex. 15, pp. 53-55.

The Article is not an evaluation of commercially available assays or about plaintiff or plaintiff's product.  Chen Decl., ¶ 10, Def.'s Ex. 16, p. 62;  Sandeep R. Das Decl., ¶ 6, attached as Def.'s Ex. 19, p. 75.  Rather, the Article focuses on ST2 research using an assay other than plaintiff's product.  Complaint, ¶ 33, Def.'s Ex. 13, p. 38.  The Article did not involve research using the Presage® ST2 Assay on the population sample from Dallas County.  *Id.*  Clearly, the Presage® ST2 Assay was not the topic of the alleged actionable Article.

"Many hypotheses about biomarkers are under investigation and the clinical utility of cardiac biomarkers is a controversial matter."  Rohatgi Decl. ¶ 9, Def. Ex. 17, p. 67; see also de Lemos Decl., ¶ 9, Def. Ex. 15, p. 54.  "No general population study of sST2 or of the Presage assay were available when [the Author Defendants] began [their] study or at the time of the June submission date of [their] manuscript to CLINICAL CHEMSITRY." Rohatgi Decl. ¶ 9, Def. Ex. 17, p. 67.  CIRCULATION, a scientific publication, and CLINICAL CHEMISTRY "published articles in September 2012 and December 2012" which both "contributed new data for the assessment of the clinical value of sST2" and both studies "applied the Presage assay."  *Id.*

At no time did the Author Defendants ever intend to harm the reputation of or otherwise damage plaintiff.  They had no reason to suspect that the Article would disparage plaintiff or plaintiff's product.  Rohatgi Decl., ¶ 10, Def. Ex. 17, pp. 67-68; Chen Decl., ¶ 10-11, Def. Ex. 16, p. 62; de Lemos Decl., ¶ 11, Def. Ex. 15, pp.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

1 | 55-56; Das Decl., ¶ 6, Def. Ex. 19, p. 75; Colby R. Ayers Decl., ¶ 7, attached as
2 | Def.'s Ex. 18, p. 72.

3 | **E.      Events Following the Publication of the Article at Issue**

4 | Following the publication of the Article, James Snider, Ph.D., President of
5 | Critical Diagnostics, sent a letter to Nader Rifai setting forth his opinion that
6 | information was erroneously reported in the Article and requesting a detailed
7 | explanation of the findings as well as equal press for plaintiff to try and right any
8 | alleged wrongs.  In response to the letter from Dr. Snider, Dr. Rifai requested that
9 | Dr. Snider prepare a Letter to the Editor.  No such Letter to the Editor was received
10 | by Dr. Rifai.  Rifai Decl., ¶ 20; see also Def.'s Ex. 2, pp. 12-16.

11 | **F.      Plaintiff's Contentions**

12 | Plaintiff contends that there are numerous factual misstatements in the Article
13 | about:  1) the Presage® ST2 Assay; 2) the testing of ST2 and 3) Critical Care
14 | Diagnostics, Inc.  Complaint, ¶¶ 34, 37, 41, 43, Def.'s Ex. 13, pp. 38-39.  The
15 | complaint alleges:

16 |     1)      The Authors' conflicts of interest were misrepresented in that Inverness
17 |             instead of Alere was disclosed.  Complaint, ¶ 34, Def.'s Ex. 13, p. 38.

18 |     2)      The following statement was false:  "However, to our knowledge,
19 |             or prior study has evaluated ST2 as a cardiac biomarker in the general
20 |             population."  Complaint, ¶ 37, Def.'s Ex. 13, p. 38.

21 |     3)      The following statement was false:  "For comparison, the limit of
22 |             [ST2] detection for the Presage  assay (Critical Diagnostics) is 1.3
23 |             µg/L."  Complaint, ¶ 41, Def.'s Ex. 13, p. 39.

24 |     4)      The following statement was false: "The development of more sensitive
25 |             assays is needed to fully  explore the potential role of this biomarker
26 |             for population screening."  Complaint, ¶ 43, Def.'s Ex. 13, p. 39.

27 | As against Dr. Rifai, plaintiff attacks Dr. Rifai for the acts or omissions of the
28 | peer reviewers who reviewed the Article prior to publication.  Specifically, plaintiff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                                     6                      3:13-cv-01308-L (WMC)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

1   contends that a "proper" literature search should have been conducted by the

2   independent reviewers and that the reviewers should have found other published

3   studies containing information purportedly contradicting the information contained

4   in the Article.  Complaint, ¶ 39, Def.'s Ex. 13, p. 39.  Thus, according to plaintiff,

5   Dr. Rifai is somehow responsible for the journal's independent peer reviewer's

6   alleged failure to conduct a "proper literature search."  Complaint, ¶ 41, Def.'s Ex.

7   13, p. 39; see also Complaint, ¶¶ 42, 43, 45, 47, Def.'s Ex. 13, pp. 39-40.

8          Dr. Rifai should not be exposed to liability for his participation in the exercise

9   of free speech.  Pursuant to the anti-SLAPP statute, all of plaintiff's claims against

10  Dr. Rifai fail.  Plaintiff cannot successfully oppose this motion because plaintiff's

11  claims are unsupported by fact and law.  Therefore, the instant special motion to

12  strike all causes of action in the complaint against Dr. Rifai, all of which are state

13  law claims, must be granted.

14  **III.**   **ARGUMENT AND AUTHORITY**

15         **A.**   **Plaintiff's Causes of Action Against Nader Rifai Arise from**

16                **Activities Subject to California's Anti-SLAPP Statute Protection**

17         California Code of Civil Procedure section 425.16 provides for the early

18  dismissal of meritless suits aimed at chilling the valid exercise of the constitutional

19  rights of freedom of speech and petition for the redress of grievances.  See Cal.

20  Code Civ. Proc., § 425.16(a); *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th

21  1036, 1042 (1997); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.

22  Supp. 2d 1127, 1128 (N.D. Cal. 1999).  Defendants sued in federal courts can bring

23  anti-SLAPP motions to strike state law claims.  *Vess v. Ciba-Geigy Corp. USA*, 317

24  F.3d 1097, 1109 (9th Cir. 2003); see also *Makaeff v. Trump Univ., LLC*, 715 F.3d

25  254, 261 (9th Cir. 2013) (petition for en banc hearing is pending to reconsider

26  precedents holding that the California anti-SLAPP Act is substantive and binding on

27  federal court.)  An anti-SLAPP statute will be given effect in federal diversity

28  actions because such a state procedure is designed to further a substantive objective.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.* 190 F.3d

2  963, 973 (9th Cir. 1999).

3      Courts evaluate anti-SLAPP motions using a two-step process.  *Navellier v.*

4  *Sletten*, 29 Cal. 4th 82, 88 (2002).  In the first step, the court determines whether

5  "the defendant has made a threshold showing that the challenged cause of action is

6  one arising from a protected activity."  *Id*.  In showing that a cause of action "arises

7  from" protected activity, the specific intent of the plaintiff is irrelevant.  *Fox*

8  *Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 305 (2001).  The only

9  consideration is whether the defendant's speech would actually be chilled as a result

10  of the lawsuit.  *Id*.  The California Legislature explicitly directed that this statute

11  "shall be construed broadly."  Cal. Code Civ. Proc. § 425.16 (a).

12      In the second step of the process used by the courts to evaluate anti-SLAPP

13  motions, a plaintiff must establish the probability that it will prevail on the merits of

14  each of its causes of action in order to survive dismissal.  Cal. Code Civ. Proc. §

15  425.16 (b).  "The plaintiff's burden is comparable to that used on a motion for

16  judgment as a matter of law."  *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078

17  (N.D. Cal. 2012).  A plaintiff's claim should be dismissed if the plaintiff presents an

18  insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff,

19  "no reasonable jury could find for the plaintiff."  *Metabolife Int'l, Inc. v. Wornick*,

20  264 F.3d 832, 840 (9th Cir. 2013).

21      Here, Dr. Rifai is entitled to bring the present motion attacking the individual

22  causes of action, as well as the complaint as a whole, because all of plaintiff's

23  causes of action against Dr. Rifai are based on state law.  The alleged actionable

24  statements, and conduct in furtherance of such speech, are protected under

25  California Code of Civil Procedure section 425.16.

26  / / /

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### 1. The Statements Were Made in a Place Open to the Public or a Public Forum

The anti-SLAPP statute protects "a writing made in . . .a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16 (e)(3). Newspapers and magazines are public fora within the meaning of section 425.16. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038 (2008); see also *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 474-475 (2000). Moreover, the California Supreme Court has held that websites accessible to the public are public forums for purposes of the anti-SLAPP statute. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41, n. 4, (2006); see also *Moreau v. Daily Indep*., 2013 U.S. Dist. LEXIS 3059 *10 (E.D. Cal. 2013).

Here, both the print and website versions of the Article are statements or writings "made in a place open to the public or a public forum" within the meaning of the anti-SLAPP statute. Cal. Code Civ. Proc. § 425.16(e)(3); Complaint, ¶ 28; Rifai Decl., ¶ 15.

### 2. The Conduct at Issue Involved Speech in Connection With a Public Issue or an Issue of Public Interest

The anti-SLAPP statute also protects "any other conduct in furtherance of the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). The question of whether something is an issue of public interest must be "construed broadly." *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1145 (2012). Matters of health "are undeniably of interest to the public." *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 47 (2003); *Rivera v. First DataBank, Inc*., 187 Cal. App. 4th 709, 716-717 (2010) (holding treatment for depression is a matter of public interest under the anti-SLAPP statute); *DuPont Merck Pharmaceutical Co. v. Sup. Ct,* 78 Cal. App. 4th 562, 567 (2000) (instructing that the "equivalence of Coumadin and its generic counterpart pertain to 'a public issue or an issue of public interest'"); *Vess v. Ciba-Geigy Corp.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *USA,* 317 F.3d at 1110 (in anti-SLAPP case statements as to use of a medication

2  were of interest to public); and *United Medical Laboratories, Inc. v. Columbia*

3  *Broadcasting System, Inc*., 404 F.2d 706, 711 (9th Cir. 1968)  (in defamation action

4  for statements made in media about accuracy of lab tests, public health issues found

5  to be "area of public interest".)

6         Statements in a respected scientific journal over a matter in the public

7  interest fall under the anti-SLAPP statute.  See *Harkonen*,  880 F. Supp. 2d at

8  1078.  Moreover, researching, authoring and publishing an article constitutes

9  conduct in furtherance of the exercise of the constitutional right of free speech.

10  See, *Bernardo v. Planned Parenthood Federation of America*, 115 Cal. App. 4th

11  322, 359-360 (2004)  (dismissing a suit involving expressions of opinion

12  published on a website about an issue of *genuine scientific debate*).

13         Conduct in furtherance of the exercise of free speech was the focus in the

14  matter of *Stewart v. Rolling Stone LLC,* 181 Cal. App. 4th 664, 674 (2010).  In

15  *Stewart v. Rolling Stone LLC*, plaintiff band members alleged that without

16  authorization, the publishers of Rolling Stone magazine used their band names in

17  an editorial feature that appeared next to a cigarette advertisement, thereby

18  suggesting that they endorsed the product.  *Id.* at 674.  The court held that the

19  conduct at issue, namely the "acts of designing and publishing, within the

20  advertising gatefold layout, an editorial feature containing [the] plaintiffs' band

21  names," satisfied the first prong of the anti-SLAPP statute.  *Id.* at 679.

22         Here, the complained of statements and conduct concerned matters of

23  public health which are undeniably of interest to the public, i.e. scientific research

24  evaluating risk prediction of disease and prevention of mortality.  Rohatgi Decl.,

25  ¶ 9, Def.'s Ex. 17, p. 67; Chen Decl., ¶ 6, Def.'s Ex. 16, p. 61; de Lemos Decl., ¶¶

26  6-11, Def.'s Ex. 15, pp. 53-56.  Even if it were somehow determined that the

27  complained of statements and conduct were not of interest to the public at large,

28  but rather more limited just to the scientific community, the alleged actionable

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                                    10                     3:13-cv-01308-L (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

1   statements and conduct are still protected because they occurred in the context of

2   an ongoing controversy or scientific dispute.  See, *Du Charme v. International*

3   *Brotherhood of Electrical Workers,* 110 Cal. App. 4th 107, 119 (2003).

4   Plaintiff's complaint, plaintiff's press releases and plaintiff's statements establish

5   that plaintiff's product was the subject of journal articles and research trials.

6   Complaint, ¶¶ 23-24, Def.'s Ex. 13, p. 37; Def.'s Ex. 2, pp. 14-16; Def.'s Ex. 3

7   through Ex. 12, pp. 17-33; Declaration of Julie R. Dann in support (herein "Dann

8   Decl."), ¶¶ 2-12; see also RFJN Nos. 1-10.

9         Dr. Rifai's conduct in the furtherance of free speech is the subject of attack

10  by plaintiff.  Plaintiff's purported libel, trade libel and violation of California

11  Business and Professions Code section 17200 claims are "based on" acts in

12  furtherance of the constitutional right of free speech.  *Mann v. Quality Old Time*

13  *Service, Inc*., 120 Cal. App. 4th 90, 104 (2004).   Dr. Rifai is being sued over the

14  contents of the scientific Article.  All of the causes of action arise from the

15  expression and dissemination of scientific ideas.  The complained of conduct is in

16  furtherance of the constitutional right of free speech in connection with a public

17  issue or an issue of public interest.  Thus, Dr. Rifai satisfies the first prong of the

18  two step test used by the courts to evaluate anti-SLAPP motions.

19     **B.     Plaintiff Cannot Establish a Probability of Prevailing on Any**

20             **Claim Against Dr. Rifai**

21        Because Dr. Rifai establishes that he is being sued for conduct in furtherance

22  of free speech protected under the anti-SLAPP statute, the burden shifts to plaintiff

23  to establish that there is a probability plaintiff will prevail on its claims.  Cal. Code

24  Civ. Proc. § 425.16(b)(1).

25        A plaintiff's reliance on allegations in the complaint is not enough to meet

26  plaintiff's burden of proof.  Cal. Code Civ. Proc. § 425.16(b)(2).  A plaintiff must

27  show there is a reasonable probability that the plaintiff will prevail on the merits at

28  trial by showing both that the claim is legally sufficient and there is admissible

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  evidence that, if credited, would be sufficient to sustain a favorable judgment.

2  *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 108 (2007).

3      Here, plaintiff cannot meet its burden.  Plaintiff cannot show a probability of

4  success in establishing Dr. Rifai's purported liability on any of plaintiff's claims.

5  Rifai Decl., ¶¶ 17, 21-25.  There is no evidence that Dr. Rifai, as individual, had

6  anything to do with the identification of plaintiff's product in the Article.  There is

7  no evidence that he knew of, or could have known, of any alleged misstatements

8  regarding plaintiff or plaintiff's product in the Article.  *Id*.

9      Per the complaint, plaintiff attacks Dr. Rifai, for the purported negligent acts

10  or omissions of the peer reviewers who reviewed the Article prior to publication.

11  According to plaintiff, Dr. Rifai is somehow responsible for the journal's

12  independent peer reviewers allegedly failing to conduct a "proper literature search."

13  Complaint, ¶¶ 39, 41, Def.'s Ex. 13, p. 19; see also Complaint, ¶¶ 42, 43, 45, 47,

14  Def.'s Ex. 13, pp. 39-40.  Here, there is no authority that an Editor-in-Chief of a

15  peer review journal is somehow liable for the purported negligence of a journal's

16  peer reviewers.  Courts have held that a publisher who relies upon the integrity of a

17  reputable author and who has no substantial reason to question the accuracy of the

18  information provided by that author cannot be held liable, even when a report is

19  later deemed to be without any factual foundation.  See, e.g., *Chaiken v. VV Publ.*

20  *Corp.*, 907 F. Supp. 689, 696-697 (S.D.N.Y. 1995).   Consequently, Dr. Rifai cannot

21  be liable based on the facts of this case.  Dr. Rifai played no role in the Article

22  following the initial assignment to the Associate Editor.  Additionally, there was no

23  substantial reason to question the accuracy of the information presented by reputable

24  Authors after the Article underwent peer review.

25      There are no facts establishing actionable conduct alleged by plaintiff against

26  Dr. Rifai in the complaint.  See *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010).

27  Dr. Rifai's nonliability proves plaintiff cannot meet its burden to defeat Dr. Rifai's

28  present motion to strike.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   **C.   Plaintiff's Purported Libel Per Se Cause of Action Fails**

2        To prove a cause of action for libel, an intentional tort, the plaintiff must

3   show: a publication, in writing, that is false, defamatory and unprivileged and has a

4   natural tendency to injure or that causes special damage to a person.  Cal. Civ. Code,

5   § 45.  Moreover, libel, a form of defamation "is a false and unprivileged publication

6   by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy,

7   or which  . . . has a tendency to injure him in his occupation."  Cal. Civ. Code, §§

8   44(a), 45. A statement that is defamatory without the need for explanatory matter

9   such as an inducement, innuendo or other extrinsic fact, constitutes "a libel on its

10  face."  *Id.*

11       Here, as a matter of law, there is no libel per se.  There is nothing defamatory

12  on the face of the Article about plaintiff or plaintiff's product.  See Rifai Decl., Ex.

13  1, pp. 1-11.  There is nothing in the Article that purportedly defames plaintiff

14  without the necessity of an explanatory matter.  *Id*.  Thus, the motion must be

15  granted as to the purported libel per se cause of action.

16  **D.   Plaintiff's Purported Trade Libel Cause of Action Fails**

17       Plaintiff contends that Dr. Rifai is liable for trade libel because he participated

18  in publishing alleged statements disparaging the quality of plaintiff's Presage® ST2

19  Assay.  Complaint, ¶¶ 78, 79; Def.'s Ex. 13, p. 43.

20       Trade libel is the disparagement of the "quality" of a product.  *Nichols v.*

21  *Great American Ins. Companies*, 169 Cal. App. 3d. 776, 773 (1985).  A cause of

22  action for trade libel thus requires (at a minimum): (1) a publication; (2) which

23  induces others not to deal with plaintiff; and (3) special damages.  *Id*.  Actionable

24  comments are limited to those that the defendant "should recognize [are] likely to

25  cause pecuniary loss."  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993,

26  1010 (2001).  Moreover, actionable comments are limited to those that play "a

27  material and substantial part in inducing others not to deal with [the plaintiff]."

28  *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964).  Trade libel requires proof of actual

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  malice.  *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1350 (1998).

2  "A cause of action for trade libel requires pleading and showing special

3  damages."  *Piping Rock Partners, Inc. v. David Lerner Assocs*., 2013 U.S. Dist.

4  LEXIS 70660, *49-50 (N.D. 2013); see also *Leonardini v. Shell Oil Co*., 216 Cal.

5  App. 3d 547, 572, 264 (1990).  Under Federal Rule of Civil Procedure, Rule 9,

6  subdivision (g) the pleader must state special damages with specificity.  To

7  adequately oppose an anti-SLAPP motion, a plaintiff who alleges trade liable must

8  present evidence showing it suffered some pecuniary loss.  *Mann v. Quality Old*

9  *Time Service, Inc.*, 120 Cal. App. 4th 90, 109-110 (2004).  "It may not rely on a

10  general decline in business arising from the falsehood, and must instead identify

11  particular customers and transactions of which it was deprived as a result of the

12  libel." *Mann*, 120 Cal. App. 4th at 109-110.

13  Here, plaintiff's purported trade libel cause of action fails for a variety of

14  reasons.  Plaintiff cannot present evidence that the Article's statements specifically

15  identified in plaintiff's complaint would be understood in a disparaging sense or

16  persuade a consumer to avoid plaintiff's product.  See *ComputerXpress*, 93 Cal.

17  App. 4th at 1011; see also Rifai Decl., ¶¶  22-24;  Rohatgi Decl., ¶ 10, Def.'s Ex. 17,

18  pp. 67-68; Chen Decl., ¶¶ 10-11, Def.'s Ex. 16, p. 62; de Lemos Decl., ¶ 11, Def.'s

19  Ex. 15, pp. 55-56; Das Decl., ¶ 6, Def.'s Ex. 19, p. 75; Ayers Decl., ¶ 7, Def.'s Ex.

20  18, p. 72.  The Article involved a study of the risk stratification of the general

21  population.  Def.'s Ex.1, pp. 1-11.  The study did not involve research of an assay as

22  a clinical aid in assessing the prognosis of patients diagnosed with chronic heart

23  failure.  *Id*.

24  Clinical use of the Presage® ST2 Assay is limited by the FDA's approval.

25  510(k) Summary attached as Def.'s Ex. 14, p. 47; see also Plaintiff's Press Release

26  attached as Def.'s Ex. 12, p. 33.  The Presage®ST2 Assay was not cleared by the

27  FDA for risk stratification in the general population.  *Id*.  Off-label use of an FDA

28  approved product would violate laws.  See 21 U.S.C. §§ 331, 333, 352.  Thus, the

1  statements identified in the complaint cannot reasonably be construed as

2  discouraging the purchase of plaintiff's product for its FDA approved use.

3      Moreover, plaintiff cannot prove actual malice on the part of Dr. Rifai and

4  cannot present evidence showing plaintiff suffered any pecuniary loss as a result of

5  any alleged malicious acts on the part of Dr. Rifai.  See Rifai Decl., ¶¶ 17, 21-25.

6  The Article encourages further testing with assays.  Def.'s Ex. 1, p. 1 (stating:

7  "[f]urther investigation is needed regarding the role of sST2 in risk prediction…");

8  Def.'s Ex. 1, p. 9 (stating "[o]ur findings provide support for a potential

9  pathophysiological role of sST2 in overall risk of death…").

10     Accordingly, plaintiff cannot meet its burden of proving a prima facie case of

11 trade libel against Dr. Rifai.  Therefore, the present motion to strike must be granted.

12     **E.      Plaintiff's Purported Libel Per Quod Cause of Action Fails**

13     Plaintiff contends that Dr. Rifai is liable for libel per quod because the

14 Article's statements allegedly "disparaged the quality" of the Presage® ST2 Assay

15 causing plaintiff purported pecuniary and reputational harm.  Complaint, ¶¶ 70, 71,

16 Def.'s Ex. 13, p. 42.

17     An action for defamation is designed to protect the reputation of the plaintiff,

18 and the judgment vindicates that reputation.  *Leonardini,* 216 Cal. App. 3d at 573.

19 Defamatory language that is not libelous on its face is not actionable unless the

20 plaintiff proves special damages as a proximate result of the libel.  Cal. Civ. Code, §

21 45(a).  A causal connection between the alleged libel and subsequent decrease in

22 income must be pled and proved.  *Biggins v. Hanson*, 252 Cal. App. 2d 16, 24

23 (1967).

24     Here, plaintiff's libel per quod claim against Dr. Rifai fails.  Plaintiff is

25 mentioned in the Article, but nothing in the Article attacks plaintiff's reputation.

26 Def.'s Ex. 1, pp. 1-11; Chen Decl., ¶ 10, Def.'s Ex. 16, p. 62; de Lemos Decl., ¶ 11,

27 Def.'s Ex. 15, p. 55; Das Decl., ¶ 6, Def.'s Ex. 19, p. 75.  The Article is "not of and

28 concerning" plaintiff.  *Id*.  The Article involved a study of the risk stratification of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                                          15                              3:13-cv-01308-L (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

1  the general population, not research of assays as a clinical aid in assessing the

2  prognosis of patients diagnosed with chronic heart failure.  Thus, the statements

3  identified in the complaint do not attack plaintiff's reputation.

4      Moreover, plaintiff is unable to prove causation as well as special damages as

5  required to prevail on its claim.  Plaintiff is unable to meet its burden to prove a libel

6  per quod cause of action to defeat the present motion to strike.

7      **F.      Defenses Bar Plaintiff's Action Against Dr. Rifai**

8          **1.      Truth is a Defense and Opinions are Not Actionable**

9      Plaintiff contends that Dr. Rifai is liable in this matter for allegedly

10  participating in the publishing of "false and defamatory statements" about the

11  Presage® ST2 Assay.  Complaint, ¶ 53, Def.'s Ex. 13, pp. 40-41.

12      An expression of pure opinion is protected by the First Amendment and may

13  not form the basis for a civil lawsuit.  *Jensen v. Hewlett-Packard Co*., 14 Cal. App.

14  4th 958, 970 (1993); *ComputerXpress,* 93 Cal. App. 4th at 1010-1011.  Moreover,

15  truth is a complete defense to liability for defamation and for trade libel.  See

16  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-769 (1986); *Gantry*

17  *Constr. Co. v. American Pipe & Constr. Co*., 49 Cal. App. 3d 186, 191-192  (1975).

18  The truth defense requires only a showing that the substance, gist or sting of the

19  communication or statements is true.  *Gantry Constr. Co.*, 49 Cal. App. 3d at 194.

20  The dispositive question for the court is whether a reasonable fact finder could

21  conclude that the published statements imply a provably false factual assertion.

22  *Melaleuca*, 66 Cal. App. 4th at 1353.

23      Whether a statement constitutes a defamatory assertion of fact or a protected

24  statement of opinion is a question of law for the court to decide.  *ZL Techs., Inc. v.*

25  *Gartner, Inc.,* 709 F. Supp. 2d 789, 796 (N.D. Cal. 2010).  The Ninth Circuit

26  employs a three-part test in determining whether alleged defamatory statements are

27  opinions or assertions of fact: "(1) whether the general tenor of the entire work

28  negates the impression that the defendant [is] asserting an objective fact, (2) whether

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  the defendant used figurative or hyperbolic language that negates that impression,

2  and (3) whether the statement in question is susceptible of being proved true or

3  false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153-60 (9th Cir. 1995); see also

4  *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005).

5      The distinction between a statement of fact and a statement of opinion is

6  frequently difficult. *Melaleuca*, 66 Cal. App. 4th at 1353.  What constitutes a

7  statement of fact in one context may be treated as a statement of opinion in another.

8  *Id*.  Consequently, the context in which the statement was made is considered. *Id*.

9  "[T]he publication in question must be considered in its entirety; '[i]t may not be

10  divided into segments and each portion treated as a separate unit.'" *Id*., see also

11  *Dong v. Board of Trustees*, 191 Cal. App. 3d 1572, 1586 (1987) (stating "[w]here

12  the facts supporting a statement are disclosed, courts have found such statements to

13  be nonactionable opinion.")  Words are not defamatory unless they are understood

14  in a defamatory sense. *Polygram Records v. Sup. Ct*., 170 Cal. App. 3d 543, 555

15  (1985).

16      Here, plaintiff cannot establish the Authors' statement in the Article's

17  introduction that the Authors were unaware of any studies evaluating sST2 as a

18  cardiac biomarker in the general population is a misstatement of fact.  Complaint, ¶

19  37, Def.'s Ex. 13, p. 38; Def.'s Ex. 1, p. 2; see also See Rohatgi Decl., ¶ 9, Def.'s

20  Ex. 17, p. 67.  The truth of the Authors' statement, namely that the authors were

21  unaware of prior studies, defeats plaintiffs' allegations of libel.  *Id*.

22      Moreover, the other complained of statements are not actionable because they

23  were made as part of an ongoing process of scientific discovery and debate.  See

24  Rohatgi Decl., ¶ 9, Def.'s Ex. 17, p. 67 (stating "clinical utility of cardiac

25  biomarkers is a controversial matter"); see also Complaint, ¶37, Def.'s Ex. 13, p. 38

26  (purportedly identifying articles from 2009 and 2010 regarding ST2 measurements

27  in healthy individuals and articles from 2012 measuring ST2 as a cardiac biomarker

28  in the general population.)  The Authors evaluated sST2 in the Dallas Heart Study to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                                17                    3:13-cv-01308-L (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

1  form an opinion about sST2 as a cardiac biomarker in the general population.  Chen

2  Decl., ¶ 6, Def.'s Ex. 16, p. 61.  The Authors set forth what limitations they had on

3  data.  See "Materials and Methods" of Def.'s Ex. 1, p. 2.  The Authors disclosed

4  their materials and methods.  *Id*.  The Authors explained they formed their

5  conclusion after looking at a number of factors and variables.  Def.'s Ex. 1, pp. 1-

6  11.  Their conclusion was dependent on the subjective and discretionary weighing of

7  complex factors.  *Id*.

8      The Authors did not use the Presage®  ST2 Assay.  They instead used a

9  Luminex system.  The Authors reported the detection limits of the assay they used

10  on the Luminex 200 reader and the modified paramagnetic Luminex beads.  Briefly

11  comparing detection limits, the Authors expressed their understanding of the limit of

12  detection of the Presage® ST2 assay.  Def.'s Ex. 1, p. 2. After conducting their

13  study, the Authors discussed their opinions that their findings provided support for a

14  potential pathophysiological role of sST2 in overall risk of death, not specific to

15  cardiovascular disease.  Def.'s Ex. 1, p. 9.  The Authors discussed their opinions

16  explaining more research was needed to determine the potential role of the

17  biomarker for population screening.   The Authors encouraged more sST2 research.

18  Chen Decl., ¶ 6, Def.'s Ex. 16, p. 61, see also Def.'s Ex. 1, pp. 1-11.

19      Here, plaintiff's critique of the Authors' scientific method, a critique of the

20  Authors' method of calibration, is not actionable.  Moreover, discussion regarding

21  the means of detection or prediction of cardiovascular disease in a scientific article

22  directed to a highly specialized group could only be perceived by the Article's

23  audience as scientific opinion.  The statements were asserted in the context of a

24  dispute or intellectual inquiry in a scientific journal.  Interpretation of scientific data

25  was a subjective assessment, not an objectively verifiable fact.  When one takes a

26  close look at the statements, it is readily apparent that the statements are nothing

27  more than non-actionable statements of truth and/or opinion.  See *ONY, Inc. v.*

28  *Cornerstone Therapeutics, Inc.*,  2013 U.S. App. LEXIS 13067, *1 (2d Cir. 2013);

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   see also *ONY, Inc. v. Cornerstone Therapeutics, Inc.,* 2012 U.S. Dist. LEXIS 69956,

2   *30 (the alleged libelous statements made by medical doctors in an article submitted

3   to a journal were opinions rather than proven facts about the efficacy of plaintiff's

4   product). The Article as a whole supports the determination that the average reader

5   would perceive these statements as debatable hypotheses rather than assertions of

6   unassailable fact. The complained of statements are nonactionable opinion. Thus,

7   Dr. Rifai's motion must be granted.

8                    **2.        The Common Interest Privilege Applies**

9            Defamation requires that the allegedly false statement be unprivileged. Cal.

10   Civ. Code, § 47, subd (c). Information communicated without malice to persons

11   interested in the communication is privileged. *Id.*

12           Generally, scholarly activity is considered to fit within the common interest

13   privilege. *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1079 (N.D. Cal. 2012),

14   citing *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007); *Lundquist v. Reusser*, 7 Cal. 4th

15   1193, 1204 (1994); *Institute of Athletic Motivation v. University of Illinois*, 114 Cal.

16   App. 3d 1, 7-14 (1980); and *Katz v. Rosen*, 48 Cal. App. 3d 1032 (1975).

17           Here, the complained of statements were disseminated in a scientific journal

18   made to interested persons. Rifai Dec., ¶¶ 10, 14. The complained of statements

19   were made in the reasonable belief that the statements were to persons also

20   interested so as to afford a reasonable ground to suppose the motive of the

21   communication to be innocent. *Id.* The complained of statements were made to

22   individuals who requested the information now complained of by plaintiff. *Id.*

23   Under this authority, this court should find that the complained of statements were

24   privileged. Cal. Civ. Code, § 47(c)(1)-(3). Thus, plaintiff's action against Dr. Rifai

25   fails unless plaintiff can prove actual malice on the part of Dr. Rifai.

26                    **3.        The Fair and True Privilege Applies**

27           A publication is deemed privileged if the publication was for the public

28   benefit and was a fair and true report. Cal. Civ. Code, § 47(e). Where malice is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    disproved, the privilege applies not only to opinions but to false statements of fact as

2    well. *Institute of Athletic Motivation*, 114 Cal. App. 3d at 8.  Here, even if plaintiff

3    was someone how able to prove that the Article contained false statements of fact,

4    plaintiff cannot overcome the present anti-SLAPP motion, unless plaintiff proves

5    that Dr. Rifai acted with malice.  Plaintiff cannot do so.

6              **4.        Plaintiff is a Public Figure or is a Limited Public Figure**

7              Even assuming the alleged statements are actionable falsehoods, not opinion,

8    plaintiff still has another significant hurdle to clear.

9              Public figures must prove by clear and convincing evidence that an allegedly

10   defamatory statement was made with knowledge of falsity or reckless disregard for

11   truth. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577, (2005) (citing *New*

12   *York Times,* 376 U.S. at 279-280.  There are two classes of public figures: (1) the

13   "all purpose" public figure who has achieved such pervasive fame or notoriety that

14   he becomes a public figure for all purposes and in all contexts; and (2) the "limited

15   purpose" public figure, an individual who voluntarily injects himself or is drawn

16   into a particular public controversy and thereby becomes a public figure for a

17   limited range of issues. *Ampex*, 128 Cal. App. 4th at 1577; see also *Gilbert v. Sykes*,

18   147 Cal. App. 4th 13, 24 (2007); *McGarry*, 154 Cal. App. 4th at 113.  For the

19   purposes of applying the First Amendment to defamation claims, the distinction

20   between corporations and individuals is one without a difference. *Vegod Corp. v.*

21   *Am. Broad. Cos*., 25 Cal. 3d 763, 771 (1979).

22             Here, plaintiff voluntarily entered the public arena of cardiac biomarker

23   research.  Def.'s Ex. 3 through Ex. 12, pp. 17-33.  Plaintiff not only provoked public

24   attention about itself and its product, but at the time the Article was published, a

25   public controversy existed regarding the utility of cardiac biomarkers.  See *Makaeff*,

26   715 F.3d at 267 (defining a public controversy as a "real dispute, the outcome of

27   which affects the general public or some segment of it.")  Plaintiff contends that the

28   Presage® ST2 Assay has been the subject of many articles regarding the scientific

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   research surrounding cardiac biomarkers.  Def.'s Ex. 2, pp. 14-16; see also Def.'s

2   Ex. 3 through 12, pp. 17-33.  According to plaintiff, "studies published in 2009 and

3   2010" noted the successful measurements of ST2 in normal, health individuals and

4   two studies published in 2012 measured ST2 as a cardiac marker in the general

5   population.  Complaint, ¶37, Def.'s Ex. 13, p. 13.  Moreover, plaintiff's extensive

6   advertising efforts of its product invited public attention.  *Id*.  Here, plaintiff is a

7   public figure, or at the very least a limited public figure.  Thus, it is proper to impose

8   the actual malice requirement on plaintiff.

9        However, even if plaintiff is not a public figure or a limited public figure,

10  plaintiff is unable to prevail against Dr. Rifai.  There is no strict liability in

11  defamation actions in California.  A private-figure plaintiff must prove at least

12  negligence to recover any damages.  *Brown v. Kelly Broadcasting Co*., 48 Cal. 3d

13  711, 747 (1989).  When the speech involves a matter of public concern, as is here, a

14  private-figure plaintiff has the burden of proving the falsity of the defamation.  *Id*.

15  Consequently, plaintiff is unable to prove even negligence to recover any damages

16  against Dr. Rifai.   See Rifai Decl., ¶¶ 17, 21-25.  Thus, Dr. Rifai's motion must be

17  granted.

18       **G.     Plaintiff is Unable to Prove Malice**

19       A showing of actual malice is required when a plaintiff seeks to overcome a

20  qualified privilege defense or if the defamatory statement relates to a public figure

21  or matter of public concern.  See *New York Times,* 376 US at 256 (public figures);

22  *Nizam-Aldine v. City of Oakland,* 47 Cal. App. 4th 364, 373 (1996) (matters of

23  public concern).  Moreover, if a defendant has made false statements which

24  disparage the contents of a product, the owner or distributor of the product is

25  required to produce clear and convincing evidence the defendant acted with actual

26  malice.  *Melaleuca*, 66 Cal. App. 4th at 1350.  If the court concludes that plaintiff

27  cannot establish a reasonable probability of proving actual malice, it need not

28  inquire whether the statements were actually false for purposes of ruling on an anti-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  SLAPP motion.  *Makaeff*, 715 F.3d at 271, n. 13.

2       In the context of an anti-SLAPP motion, a public figure, including a limited

3  purpose public figure, must establish a probability that he can produce clear and

4  convincing evidence that the allegedly defamatory statements were made with

5  knowledge of their falsity or with reckless disregard of their truth or falsity. *Gertz v.*

6  *Robert Welch, Inc*.  418 U.S. 323, 342 (1974); *Makaeff*, 715 F.3d at 265; *Harkonen*

7  *v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012); see also *Ampex*, 128 Cal.

8  App. 4th at 1578; *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1446 (2001).  The

9  reckless disregard test requires a high degree of awareness of the probable falsity of

10  the defendant's statement.  There must be sufficient evidence to permit the

11  conclusion that the defendant in fact entertained serious doubts as to the truth of his

12  publication.  *Gertz*, 418 U.S. at 331-332, 334 n.6; *Ampex*, 128 Cal. App. 4th at 1579

13  .  To meet the clear and convincing standard, the evidence must be such as to

14  command the unhesitating assent of every reasonable mind.  *Ampex*, 128 Cal. App.

15  4th at 1579.

16       Moreover, the law provides that publishers do not have to investigate

17  personally, "but may rely on the investigation and conclusions of reputable sources.

18  'Where the publication comes from a known reliable source and there is nothing in

19  the circumstances to suggest inaccuracy, there is no duty to investigate.'" *Reader's*

20  *Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 259 (1984) (quoting *Bindrim v.*

21  *Mitchell*, 92 Cal. App. 3d 61, 73 (1979).  Furthermore, courts do not, and

22  constitutionally could not, sit as superior editors.  See *Ross v. Midwest*

23  *Communications, Inc*., 870 F.2d 271, 275 (5th Cir. Tex. 1989) ["Exuberant judicial

24  blue-penciling after-the-fact would blunt the quills of even the most honorable

25  journalists."]

26       Here, the Authors were required to disclose their conflicts of interest.

27  Declarations of James C. Boyd, M.D., ¶¶ 6-9 and Sheehan Misko, ¶¶10, 16-18 as

28  well as Exhibit 6 filed in support of AACC's Motion for Dismissal Pursuant to Cal.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Code of Civil Procedure Section 425.16.  Moreover, the Article was authored by

2  authors with extensive relevant experience.  Rohatgi Decl., ¶¶ 2-7, Def.'s Ex. 17, pp.

3  65-66; Chen Decl., ¶¶ 3-9, Def.'s Ex. 16, pp. 60-62; de Lemos Decl., ¶¶ 2-11, Def.'s

4  Ex. 15, pp. 52-56; Ayers Decl., ¶¶ 2-4, Def.'s Ex. 18, p. 17; Das Decl., ¶¶ 2-4,

5  Def.'s Ex. 19, pp. 74-75; see also Rifai Decl., ¶¶ 22-23.  In addition, peer reviews

6  were conducted to analyze the science behind the Article.  Rifai Decl., ¶¶ 15-16.

7  Consequently, there is no evidence to suggest that Dr. Rifai had any reason to know

8  or suspect any misstatements or false statements in the Article prior to publication.

9  See *New York Times*, 376 U.S. at 287-288 (in which the court held that a

10 newspaper's failure to check the accuracy of the advertisement against news stories

11 in its own files did not establish reckless disregard for the truth.)  Plaintiff cannot

12 sustain its burden establishing that Dr. Rifai either knew the complained of

13 statements were false or that Dr. Rifai believed the complained of statements were

14 likely to be false.  Rifai Decl., ¶¶ 17-25; see also Boyd Decl., ¶¶ 6-9; Misko Decl.,

15 ¶¶ 9-10, 16-18; and Nori C. Jones Decl., ¶ 9 filed in support of AACC's Motion for

16 Dismissal Pursuant to Cal. Code of Civil Procedure Section 425.16.

17      According to the complaint, the peer reviewers failed to uncover information

18 about prior studies involving plaintiff's product.  Complaint, ¶ 39, Def.'s Ex. 13, p.

19 39.  Based on the allegations set forth in the complaint, Dr. Rifai could not have

20 known about plaintiff's product due to the alleged negligent failure of the peer

21 reviewers to discover purportedly erroneous information about plaintiff and/or

22 plaintiff's product.  Plaintiff cannot establish that Dr. Rifai knew that publication of

23 the Article would have a potentially devastating impact upon plaintiff.  Plaintiff is

24 unable to produce clear and convincing evidence the Dr. Rifai acted with actual

25 malice.  Rifai Decl., ¶¶ 17-25.

26      Overall, plaintiff's claims for trade libel and defamation fail.  Plaintiff is

27 unable to establish the necessary elements, including malice, to prevail on its claims

28 against Dr. Rifai.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4853-1535-9508.1                                                    3:13-cv-01308-L (WMC)
                                      23
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NADER RIFAI'S MOTION
TO STRIKE PLAINTIFF'S COMPLAINT

## H.   Plaintiff Cannot Prevail on Its Section 17200 Cause of Action

California's unfair competition law prohibits unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice."  Bus. & Prof. Code, § 17200.  Noncommercial speech is not actionable under Business and Professions Code sections 17200.  *Bernardo*, 115 Cal. App. 4th at 343.  Commercial speech is "usually defined as speech that does no more than propose a commercial transaction."  *Id*.  Consequently, expressions of opinion about an issue of genuine scientific debate are noncommercial speech fully protected by the United States Constitution and not actionable under Business and Professions Code section 17200, *Id*. at 342.

An "unlawful" business practice or act within the meaning of the UCL is an act or practice committed pursuant to business activity that is at the same time forbidden by law.  *Bernardo*, 115 Cal. App. 4th at 351-352.  The unfairness prong of Business and Professions Code section 17200  "has been used to enjoin deceptive or sharp practices."  *Id*. at 354.  A "fraudulent" business act or practice is an act or practice in which "members of the public are likely to be deceived.  *Id*. at 355.

Here, the Article did not propose a commercial transaction in its contents. Def.'s Ex. 1, pp. 1-11.  Rather, the Article and its statements are educational and scholarly in nature.  *Id*., see also Rifai Decl., ¶ 14.  Dr. Rifai was a person engaged in the dissemination of ideas or expression in an academic journal, not commercial speech.  See Code Civ. Proc., § 425.17; see also *Stewart*, 181 Cal. App. 4th at 689; Rifai Decl., ¶¶ 14, 17, 25.   The Article asserts positions regarding disputed scientific and medical issues of public interest.  Plaintiff seeks to enjoin statements of opinion from researchers and scholars about the role of sST2 in risk prediction and for population screening, a subject of scientific debate.  Because this case involves noncommercial speech, i.e., expressions of opinion about an issue of genuine scientific debate, plaintiff's purported UCL claim fails as a matter of law.

Additionally, even if plaintiff was somehow able to establish that the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  statements constitute commercial speech, plaintiff's UCL claim still fails. First,

2  plaintiff fails to state which statute, regulation or law (whether federal, state or

3  common law) Dr. Rifai allegedly violated. Second, plaintiff cannot show that Dr.

4  Rifai engaged in "deceptive or sharp" practices that may be enjoined under the

5  UCL, and plaintiff cannot meet its burden of showing a reasonable probability of

6  prevailing on its claim that the speech was an "unfair" practice or act within the

7  meaning of the UCL. Third, plaintiff cannot meet its burden of showing a

8  reasonable probability of prevailing on the merits of its claims that Dr. Rifai's

9  speech was likely to deceive members of the public and that it constituted a

10  fraudulent business act or practice within the meaning of the UCL. See Rifai Decl.,

11  ¶¶ 17, 19, 21-25. Thus, Dr. Rifai's motion must be granted.

12       **I.**      **Defendant Is Entitled to Recover Its Costs and Attorneys' Fees.**

13        If plaintiff fails to carry its burden, Dr. Rifai will request recovery of

14  attorneys' fees through a noticed motion. Cal. Code Civ. Proc. §425.16(c). In

15  federal court, fees and costs may be awarded pursuant to the anti-SLAPP statute.

16  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999).

17 **IV.**   **<u>CONCLUSION</u>**

18        For the foregoing reasons, Defendant Nader Rifai respectfully requests an

19  order granting his special motion to strike, dismissing him with prejudice from this

20  matter, and conditionally awarding him the fees and costs incurred in bringing this

21  motion subject to submission of proof of those fees and costs.

22 DATED: July 2, 2013            Respectfully submitted,

23

24                          LEWIS BRISBOIS BISGAARD & SMITH LLP

25                     By:        /s/ JULIE R. DANN

26                          Marilyn R. Moriarty

27                          Julie R. Dann

28                          Attorneys for Defendant NADER RIFAI

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW