Regina A. Petty (SBN 106163)
  Email:  rpetty@laborlawyers.com
David E. Amaya (SBN 259418)
  Email:  damaya@laborlawyers.com
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone (858) 597-9600
Facsimile (858) 597-9601

Attorneys for Defendants
LU Q CHEN, JAMES A. DE LEMOS,
SANDEEP R. DAS, COLBY R. AYERS, AND
ANAND ROHATGI

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRITICAL CARE DIAGNOSTICS, INC., DBA CRITICAL CARE DIAGNOSTICS, a Delaware corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>AMERICAN ASSOCIATION FOR CLINICAL CHEMISTRY, INC., a New York non-profit corporation, NADER RIFAI, an individual, LU Q. CHEN, an individual, JAMES A. DE LEMOS, an individual, SANDEEP R. DAS, an individual, COLBY R. AYERS, an individual, and ANAND ROHATGI, an individual; and Does 1 to 100, inclusive,<br><br>        Defendants. | Case No.:  13cv1308 L (WMC)<br><br>*[Removed from the Superior Court of California, County of San Diego, Case No. 37-2013-00045589-CU-DF-CTL The Honorable Richard E.L. Strauss Department: C-75]*<br><br>**DEFENDANTS' LU Q. CHEN, JAMES DE LEMOS, SANDEEP R. DAS, COLBY R. AYERS, AND ANAND ROHATGI REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, UNDER FED. R. CIV. PROC. 12(b)(2) OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. PROC. 12(b)(6)**<br><br>Hearing:    Submitted Without Oral Argument<br><br>Courtroom: 5b<br>Judge:      Hon. James Lorenz |

Case No. 13cv1308 L (WMC)

DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B) MOTIONS TO DISMISS

I.    **THERE IS NO EVIDENCE SUPPORTING THE ASSERTION OF JURISDICTION OVER THE TEXAS RESEARCHERS**

    A.    <u>**Plaintiff is a Citizen of the States of Delaware and New York, not California**</u>

A corporation, like Plaintiff, is deemed to be a citizen of any state which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" means the place where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis, referred to as the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1186, 1192 (2010).  The "nerve center" is not established merely by claiming that a headquarters is located in a vacation destination where the majority of its high level officers do not work.  *Id* at 1192.

In *Mardikian et al. v. Golden Eagle Insurance et al.*, No. C 13-02981, 2013 U.S. Dist. LEXIS 121229, *6-9 (N.D. Cal. Aug. 26, 2013), a district court recently rejected a party's assertion that its nerve center was in Boston, Massachusetts when its own website confirmed its nerve center was in San Diego, California, and its attorney was located in California.   Here, the evidence shows Plaintiff is a citizen of both Delaware (where it is incorporated) and New York (where its "nerve center" is located), not California.

Plaintiff is incorporated in the State of Delaware.  See Complaint, ECF No. 1-1.  Plaintiff's nerve center is in New York where Carrot Capital Healthcare Ventures, David M. Geliebter (its Chairman and CEO), Sven Jacobson (its Director), and Jocelyn Jacobson (its attorney) are located.  *See* Regina A. Petty Reply Declaration ("Petty Reply Decl."), ¶¶ 6-7 and attached Ex. 12 at 3-4, 5, 9-10.  Mr. Jacobson oversees and directs all aspects of Plaintiff's operations.  *Id.* at ¶¶ 4-5, 7, 16(b), and Ex. 12 at 1-2, 4-6, 9-10.  Plaintiff's attorney is based in New York and worked "intricately" with Plaintiff initiating this lawsuit.  *Id.* at ¶¶ 19-22.  Plaintiff's intellectual property is licensed from a Boston hospital.  *Id.* at ¶ 8.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B) MOTIONS TO DISMISS

Plaintiff's "nerve center" certainly is not located in California, where only two of its seven high-level officers appear to work from.  *See* Petty Reply Decl., ¶ 16. Plaintiff is a Delaware and New York resident under a federal jurisdiction analysis.  Plaintiff is not legally entitled to impose California jurisdiction over the University of Texas employees.

**B.**   **Plaintiff Concedes There is no Evidence Establishing Jurisdiction Over Dr. Chen, Dr. Das or Mr. Ayers**

Plaintiff makes the stand-alone statement without citing to case law that Dr. de Lemos' knowledge is imputed to his co-authors for purposes of finding personal jurisdiction over them.  *See* ECF 47, p. 20 of 34.

The court cannot impute Dr. de Lemos' knowledge to his co-authors for purposes of personal jurisdiction. *See Calder.* 465 U.S. at 786, 789-90 (stating "[e]ach defendant's contacts with the forum States must be assessed individually" and separately discussing the author's and editor's contacts with California).  The Court should reject Plaintiff's desperate attempt to impute Dr. de Lemos' knowledge onto his co-authors.

**C.**   **Plaintiff has no Evidence to Support Jurisdiction Over the Texas Researchers**

**1.**   **Plaintiff Focuses on a Non-Existent and Irrelevant Contact**

Plaintiff argues that there are sufficient minimum contacts between Dr. de Lemos and Dr. Rohatgi and California because they had significant collaboration with Alere in choosing ST2 as one of the biomarkers to test and Alere transmitted the data to them from California.  The argument is devoid of merit.  Plaintiff does not contest the evidence that Biosite announced that it had the ability to perform assays on 44 markers pursuant to an agreement with UTSW in 2009, and transmitted the data to the Dallas Heart Study in bulk.  Reply Declaration of James de Lemos ("de Lemos Reply Decl."), ¶¶ 2, 4; ECF 22-1, ¶ 10.  Plaintiff presented no facts to show that Dr. de Lemos or Dr. Rohatgi have a financial

1    interest in the development of a ST2 assay because it cannot do so. *See* de Lemos

2    Reply Decl., ¶¶ 3, 5 ; Reply Declaration of Anand Rohatgi ("Rohatgi Reply

3    Decl."), ¶ 2-5.

4    　　　Second, Plaintiff improperly argues that the location of the source of

5    financing or information for an article creates jurisdiction over a non-resident.

6    The Ninth Circuit holds the exact opposite. *See Church of Scientology of*

7    *California v. Adams*, 584 F.2d 893, 896 (9th Cir. 1978) (newspaper's revenues

8    from California advertisers and ownership of 17 percent of stock in a California

9    company irrelevant to personal jurisdiction over Missouri residents for libel

10   claim); *Gordy v. Daily News, L.P.,* 95 F.3d 829, 831 (9th Cir. 1996) (general news

11   gathering techniques of confirming stories with sources in California irrelevant to

12   personal jurisdiction over New York residents for defamation claim).  The UTSW

13   research sponsorship agreement with Alere is, therefore, irrelevant.

### 2.    Dr. De Lemos' Mere Knowledge of Plaintiff Does not Establish Jurisdiction

16   　　　James Snider concedes that the meeting attended by Dr. de Lemos over five

17   years ago on February 29, 2008, did not include a discussion of using the

18   Presage® ST2 Assay in the general population.  *See* ECF 47-2, ¶  18 and Ex. E

19   and F attached thereto; *see also* de Lemos Reply Decl., ¶¶ 31-35.  Plaintiff has

20   merely shown that Dr. de Lemos knew of an office location in California.

21   Without something more, however, this is insufficient to find personal jurisdiction

22   over him.  *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1158 (9th Cir. 2006)

23   (holding that alleged unlawful use of domain name "Pebble Beach" on

24   defendant's website coupled with knowledge of Pebble Beach golf resort's

25   location in California is insufficient for finding of personal jurisdiction and stating

26   "[t]he fact that [defendant] once lived in California and therefore has knowledge

27   of the Pebble Beach golf resort goes to the foreseeable effect prong of the "effects

28   test" and is not an independent act that can be interpreted as being expressly

1   aimed at California.").  Because Plaintiff does not point to any other relevant

2   evidence supporting jurisdiction over Dr. de Lemos, the Court does not have

3   jurisdiction over him.

4       **D.**    <u>**Plaintiff was not Harmed in California**</u>

5       Plaintiff is not incorporated in California and its principal place of business

6   is in New York.  Plaintiff has not established it suffered any harm and its false

7   allegation of a principal place of business in California fails to establish that it was

8   harmed in California.

9       **E.**    <u>**It is Manifestly Unreasonable to Find Jurisdiction Over the**</u>

10  <u>**Texas Researchers When the Focal Point of Their Activities was Neither Plaintiff nor California**</u>

11      Contrary to Plaintiff's contention at page 15 of its Opposition, the Supreme

12  Court and Ninth Circuit have held that mere foreseeability that the peer reviewed

13  article will be of interest to persons in the another state is insufficient for an

14  assertion of personal jurisdiction.  *See Calder v. Jones*, 465 U.S. 783, 789 (1984)

15  ("The mere fact that [the authors] can 'foresee' that the article will be circulated

16  and have an effect in California is not sufficient for an assertion of jurisdiction");

17  *Schwarzenegger v. Fred Martin Motor Co.*, 379 F.3d 797, 804 (2004) ("*Calder*

18  'cannot stand for the broad proposition that a foreign act with foreseeable effects

19  in the forum state always gives rise to specific [personal] jurisdiction."

20      The foreseeability that is critical to due process analysis is that the

21  defendant's conduct and connection with the forum State are such that he should

22  reasonably anticipate being haled into court there."  *World-Wide Volkswagen*

23  *Corp. v. Woodson*, 444 U.S. 286, 297.  Plaintiff cited no authority supporting the

24  notion that a peer reviewed article's reference to a company, as a result of a

25  legitimate response to a peer-reviewer's comments, makes it reasonable to assert

26  jurisdiction over the authors of the article. *Calder* is controlling here precluding

27  the assertion of jurisdiction.

28

Moreover, the Ninth Circuit rejected the Plaintiff's baseless scientific mercenary argument in *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482 (9th Cir. 1993).   The Ninth Circuit rejects the assertion of jurisdiction over foreign doctors who author multiple articles in an international medical journal claiming the plaintiff's products should not be used and that its competitor's products were better.  *Core-Vent Corp,* 11 F.3d at 1491.  Unlike the Swedish doctors, the Texas public university employees have not promoted one product over another product. Plaintiff's president believes the mention of Presage arose from the peer review process.  Thus , this case falls below the mercenary theory which the Ninth Circuit holds is an unreasonable basis for the exercise of jurisdiction.

**F.**   **Plaintiff Failed to Explain How Jurisdictional Discovery Would Yield Helpful Jurisdictional Facts**

Jurisdictional discovery would only confirm that Plaintiff is not a California resident and improperly filed this lawsuit in California.  Requests for jurisdictional discovery under similar circumstances have been repeatedly been denied.  *See, e.g., Getz v. Boeing Co.,* 654 F.3d 852, 860 (9th Cir. 2011) (upholding the denial of jurisdictional discovery where plaintiffs failed to identify any "specific facts, transactions, or conduct" that might support the exercise of personal jurisdiction); *Upper Deck Int'l B.V. v. Upper Deck Co.,* 2012 U.S. Dist. LEXIS 67957 (S.D. Cal. May 11, 2012) (rejecting request for jurisdictional discovery because the plaintiff provided "nothing other than blind hope that additional, helpful jurisdictional facts will turn up . . . .").

**II.**   **THE RULE 12(B)(6) MOTION SHOULD BE GRANTED**

**A.**   ***Ony, Inc. v. Cornerstone Therapeutics* Compels Dismissal of all of Plaintiff's Claims**

Plaintiff disputes the Author Defendants' scientific conclusions and claims three false statements were made in the Dallas Heart Study Article.  *See* ECF 47, pp. 28-34.  This is the very theory that – for sound reasons – the Second Circuit

recently rejected in *Ony, Inc. v. Cornerstone Therapeutics,* 2013 WL 3198153, *5 (2d Cir. June 26, 2013), when it affirmed the granting of a motion to dismiss.

**1.     The Articles Acceptable to Plaintiff Establish that the Dallas Heart Study Reported the Best Limit of Detection**

The Dieplinger 2009, Snider 2010, Wang 2012, and Coglianese 2012 articles approved by Plaintiff establish that the lower limit of detection ("LOD") of 1.3 µg/L reported in the Dallas Heart Study Article was better than reported in the these articles.  (Dieplinger 2009 (LOD of 2 U/mL), at 38, ECF 47-5, at 7; Snider 2010 (LOD of 1.6 ng/mL), at 1826, ECF 47-6, at 3; Wang 2012 (LOD of 2 ng/mL), at 1597; ECF 19-5 at 25; Coglianese 2012 (2 µg/L), at 1675, Ex. 8-3, ECF No. 19-5 at 44.)   Plaintiff fails to show how the best reported LOD is misleading compared to the inferior LOD published in other articles.

The fact that Plaintiff obtained a result – that was referred to by the Authors as "remarkable", *see* ECF 19-5, Ex. 8-5 –  in a *different* population study using a *different* assay, does not make the limit of detection of the Presage® ST2 Assay reported in the Author Defendants' Article misleading.  If there is any confusion, it is due to Plaintiff using the same product name.

**2.     Snider Admits That No Prior Study Evaluated ST2 as a Biomarker in the General Population**

Snider attaches two articles to his declaration that he states "noted the successful measurement of ST2 in the general population using the Presage® ST2 Assay."  Snider carefully stops short of stating these Articles qualify as general population studies.  Instead, he accepts the correctness of the Wang article claim in September 2012 that it is the first general population study.  *See* ECF 47-5, ¶¶ 9-10; 19-5, Ex. 7-3.    The Framingham Heart Study beat the Dallas Heart Study to this distinction by just a few months.  The Wang Article specifically cites to the Dieplinger Article to state that the detection limit for the Presage® ST2 Assay is 2ng/ML, but then states:  "The present study is the first to examine the

DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B) MOTIONS TO DISMISS

1   prognostic value of sST2 measurements *in the general population* . . . ."  ECF 19-

2   5, Ex. 7-6 (emphasis added).   The Wang 2012 Article had not been published at

3   the time the Article was submitted to Clinical Chemistry. *Compare* ECF 19-5, Ex.

4   7-2 [published online on August 20, 2012] *with*  ECF 22, p. 9 [Dallas Heart Study

5   Article received June 12, 2012].

**3.    *Ony, Inc.* Precludes Plaintiff's Attempt to Silence the Texas Public Employees' Scientific Opinions and Observations**

8   In *Ony*, *Inc.,* Plaintiff Ony, Inc., a producer of non-human surfactants,

9   brought an action against a competing producer of surfactants and several doctors

10  who Ony's competitor had commissioned to present findings based on data (that

11  was obtained by Ony's competitor) showing the relative effectiveness of the

12  different surfactants.   *Ony, Inc.,* 2013 WL at *1-2.   The doctor defendants

13  presented findings at several conferences and several years later published some

14  of their findings from the same data set in a peer-reviewed journal. *Id.*  Ony, Inc.

15  claimed the article contained five distinct incorrect statements of fact about the

16  relative effectiveness of the surfactants.  *Id.* at *2.   Ony, Inc. made several

17  objections related to the article, including that it failed to cite articles with

18  different primary conclusions. *Id.* at *3.   Ony, Inc. alleged causes of action for

19  violations of the Lanham Act and New York General Business Law § 349, as well

20  as claims for injurious falsehood and tortious interference with prospective

21  economic advantage. *Id.* at *4.

22   The Second Circuit  rejected all of Ony, Inc.'s claims and affirmed the trial

23  court's granting of the defendants' motion to dismiss.  *Id.* at *6-7.  It found that

24  statements in a peer-reviewed journal are "more closely akin to matters of

25  opinion, and are so understood by the scientific communities."  *Id.* at *6.   It

26  concluded:

27            to the extent a speaker or author draws conclusions from non-
              fraudulent data, based on accurate descriptions of the data and
28            methodology underlying those conclusions, on subjects about which

there is a legitimate ongoing scientific disagreement, those statements" are not grounds for false advertising [or defamation].

*Id.*   Plaintiff attempts to distinguish *Ony, Inc.* by desperately arguing that the statements made in the Article are not subject to ongoing scientific disagreement. ECF 47, p. 32.

In proclaiming there is no public controversy,  Plaintiff dismisses the recent US Preventative Services Task Force conclusion, which was cited in the Wang 2012 article, that cardiovascular biomarkers provided limited clinical utility for screening of asymptomatic men and women with no history of coronary heart disease.  *See* U.S. Preventative Services Task, *Using Nontraditional Risk Factors in Coronary Heart Disease Risk Assessment:   U.S. Preventive Services Task Force   Recommendation   Statement*   (August   30,   2013,   8:38   a.m.) http://www.uspreventiveservicestaskforce.org/uspstf09/riskcoronaryhd/coronaryhdrs.htm (previously lodged with the court for its convenience as ECF 38-20); *see* Wang 2012, ECF No. 19-5, Ex. 7-2.

The first study to release broader ST2 measurement figures involving the Presage assay was the Coglianese 2012 article published by CLINICAL CHEMISTRY in December 2012.   The Coglianese 2012 article does not announce a better limit of detection for the Presage ST2 assay than indicated in the Dallas Heart Study article.  See Coglianese 2012, at 1675; ECF No. 19-5, Ex. 8-2. Adhering to the limit of detection of 2.0 µg/L, the Coglianese 2012 article merely reports the "remarkabl[e]" observation of 100% measurement of ST2 using the Presage assay.  See Coglianese 2012, at 1677; ECF No. 19-5, Ex. 8-4.

The Coglianese authors also advise that more study of sST2 is warranted: "Our study is limited in that we examined a population cohort that was primarily white, and there were few elderly individuals in the cohort.  Thus, our results cannot necessarily be generalized to individuals outside this demographic or age range."   *Id* at 1679.  The Coglianese 2012 article expresses the opinion: "Because

DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B) MOTIONS TO DISMISS

sST2 has been established as a potentially useful biomarker for risk prediction in patients with established heart disease, our data are important, as ***they may now allow for investigations of the potential role of sST2 testing in a considerably broader, community-based population***." *Id.* at 1680 (emphasis added).

The Dallas Heart Study article is at the heart of ongoing scientific controversy and disagreement.  Plaintiff's attempt to refute the evidence is based on the presumptuous and incorrect contention that the Presage Assay and the ST2 is irrefutably the answer to preventing and treating heart disease.  Plaintiff is wrong on both counts.

Three separate efforts to define the reference intervals for the Presage ST2 assay have produced three different outcomes.  (See Dieplinger 2009 article, Snider 2010 and Coglianese 2012, Snider July 22, 2013 Decl., Ex. B and C, respectively, ECF Nos. 47-5 and 47-6; 19-5, Ex. 8, respectively.)

Thus, *Ony, Inc.* is directly on point, is in accord with other federal courts that have arrived at the same conclusion, *see Ony, Inc.*, 2013 WL at *5 (compiling cases), and compels dismissal of Plaintiff's claims.  As dictated by *Ony, Inc.,* the statements in the Article are understood by the relevant scientific community as matters of opinion and cannot support a claim for unfair competition or defamation. *Id.* at *6-7.

**B.     The 17200 Claim Fails for Additional Reasons**

     **1.     Academic Speech is not Actionable Under Section 17200**

Section 17200 is limited to the narrow category of commercial speech, and not to academic speech.  *Rezec v. Sony Pictures Entertainment*, (2004) 116 Cal.App.4th 135, 140.  As one court explained in analogizing to an analogous law, section 17200 "does not seek to restrict noncommercial speech in any manner.  It is tailored to protected the public from false commercial speech, a category of speech which has been held to be more durable, verifiable and of a lower social

DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B) MOTIONS TO DISMISS

value than fully protected noncommercial speech." *Williams O'Neil & Co. v. Validea.com Inc.*, (C.D. Cal. 2002) 202 F.Supp.2d 1113, 1121 (citations omitted). The speech in the Dallas Heart Study article was noncommercial, academic speech. Section 17200 is therefore inapplicable to this action.

**2.   Critical Diagnostics, Its Scientific Advisory Board and Articles Acceptable to Critical Diagnostics Do Not Consider an ST2 Assay to be in Competition with a BNP Assay**

Plaintiff alleges the Presage® ST2 Assay is in competition with Alere's NT-proBNP. *See* Complaint, ¶ 20; ECF 47, p. 33. This allegation is untrue. The Snider 2010 Article states the Presage® ST2 was merely additive to the NT-proBNP. Snider July Decl., ECF 47-6, at 2; 47-9, at 7. Plaintiff's previous admissions that Presage® ST2 did not compete with NT-proBNP disposes of Plaintiff's unfair competition claim.

DATED:   September 9, 2013          FISHER & PHILLIPS LLP

By: _s/ Regina A. Petty_____
          Regina A. Petty
          rpetty@laborlawyers.com
          Attorney for Defendants
          LU Q CHEN, JAMES A. DE
          LEMOS, SANDEEP R. DAS, AND
          ANAND ROHATGI