UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRITICAL CARE DIAGNOSTICS, INC., dba CRITICAL CARE DIAGNOSTICS,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>AMERICAN ASSOCIATION FOR CLINICAL CHEMISTRY, INC., *et al.*<br><br>　　　　　　　Defendants. | Case No. 13cv1308 L (WMC)<br><br>**ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [doc. #19]; DENYING AS MOOT MOTION TO DISMISS UNDER RULE 12(b)(6) and DENYING AS MOOT MOTION TO STRIKE [doc. #38]** |

Defendants Lu Q. Chen ("Chen"), James A. de Lemos ("de Lemos"), Sandeep R. Das ("Das"), Colby R. Ayers ("Ayers") and Anand Rohatgi ("Rohatgi") (collectively "Author Defendants") move to dismiss Plaintiff's Complaint for lack of personal jurisdiction, or alternatively, for failure to state a claim. In connection with their Motion, Author Defendants request judicial notice. (RJN [Doc 19-5].) This Motion has been fully briefed and is considered without oral argument.

For the following reasons, the Court **GRANTS** Author Defendants' Request for Judicial Notice, and **GRANTS** Author Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

/ / /

/ / /

## I.   BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in San Diego, California. (Compl. ¶ 1 [Doc 1].) Plaintiff is a biomarker company, focused on cardiovascular diseases, and holds several patents surrounding the ST2 protein in the field of cardiac biomarkers and their use in heart failure as well as primary disease prevention. (*Id.* ¶ 15.) Plaintiff produces the Presage® ST2 Assay ("Presage Assay"), which is used to measure the level of ST2 protein in the blood in order to predict complications associated with cardiovascular disease. (*Id.* ¶¶ 16-17.) The Presage Assay is the only FDA-cleared ST2 assay, and therefore, the only commercially marketed ST2 assay for clinical use as a cardiac biomarker. (*Id.* ¶ 18.) Alere, Inc. ("Alere"), another biomarker company, has also developed an ST2 assay ("Alere ST2 Assay"), which is not FDA cleared or commercially available. (*Id.* ¶ 19.)

Author Defendants each worked on research for the Dallas Heart Study during the period relevant to this lawsuit. (Ayers Decl. ¶ 3 [Doc. 19-2]; Chen Decl. ¶ 5 [Doc. 19-3]; Das Decl. ¶ 4 [Doc. 19-4]; de Lemos Decl. ¶ 2 [Doc. 40-2]; Rohatgi Decl. ¶ 4 [Doc. 20-1].) Together, Author Defendants wrote an article titled "Soluble ST2 Is Associated with All-Cause and Cardiovascular Mortality in a Population-Based Cohort: The Dallas Heart Study," ("Article"). (Compl. ¶¶ 28, 29, 30.) The Article evaluated the use of ST2 as a cardiac biomarker in the general population. (*See Id.* ¶ 37.) Although Author Defendants performed their analysis and wrote the Article in Texas, the underlying testing to generate the data for the analysis was provided by Alere, in San Diego, California, using the Alere ST2 Assay. (*Id.* ¶ 36; Opp'n 7 [Doc 47].)

In December 2012 and March 2013, the Article was published online and in print, respectively, in CLINICAL CHEMISTRY, a peer-reviewed journal ("the Journal"). (Compl. ¶ 28.) The Article contains a single reference to the Presage Assay, and two other statements which Plaintiff alleges are false statements of fact. (*Id.* ¶¶ 37-44.)

On April 22, 2013, Plaintiff initiated this action in the Superior Court for the State of California, County of San Diego. In its Complaint, Plaintiff alleges four causes of action: (1) Libel Per Se; (2) Libel Per Quod; (3) Trade Libel; and (4) Unlawful, Fraudulent, and/or Unfair

Business Practices. On June 5, 2013, Author Defendants removed the action to this Court.

On June 22, 2013, Author Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or alternatively, to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). In connection with the Motion, Author Defendants also filed a Request for Judicial Notice of seven exhibits. (RJN.) Plaintiff opposes the Motions to Dismiss, and opposes judicial notice of all but one of the requested exhibits, to the extent that Defendants offer such exhibits for the truth of contents contained therein.

## II.   LEGAL STANDARD

Under Rule 12(b)(2), a court may dismiss a suit for "lack of jurisdiction over the person." FED. R. CIV. P. 12(b)(2). When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rios Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In ruling on a motion brought under 12(b)(2), the "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). "In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve the disputed jurisdictional facts in the plaintiff's favor." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922.

## III.   DISCUSSION

### A.   Judicial Notice

In support of their Motions to Dismiss, Author Defendants ask the Court to take judicial notice pursuant to Federal Rule of Evidence 201(b)(2) of seven exhibits, numbered 3 through 9.

(RJN 2.)

Under the Federal Rules, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EV*ID.* 201(b). Judicial notice may be taken "of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The truth of the content and the inferences properly drawn from them are not a proper subject of judicial notice under Rule 201. *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal., 2008). Finally, the court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Exhibits 3 includes documents purportedly filed with the Food and Drug Administration. (RJN 2, Exhs 3-1 through 3-4.) Plaintiff does not oppose Author Defendants' request for judicial notice of these documents, to the extent that the Court only takes judicial notice of the fact that these documents were filed and that they contain statements therein. (Opp'n to RJN 2.) The Court, therefore, will consider these exhibits in reviewing Author Defendants' Motion to Dismiss to the extent permitted.

Exhibits 4, 5, and 9 are press releases from Plaintiff's website. (RJN 2, Exhs 4, 5, and 9.) Plaintiff opposes judicial notice of these press releases as they are not mentioned in the Complaint. (Opp'n to RJN 3.) Further, Plaintiff opposes judicial notice to the extent that Author Defendants offered such exhibits for the truth of the contents contained therein. (Opp'n to RJN 2-3.) Although the documents are not mentioned in the Complaint, Plaintiff does not dispute their authenticity. Finally, Plaintiff opposed judicial notice of Exhibit 9 as the right hand margin of the page is cut off. (Opp'n to RJN 3.) Although the right hand margin is cut off, the Court is only taking notice of the existence of the press releases, not the truth of the matters contained therein. Therefore, the Court will consider these exhibits, to the extent appropriate under the circumstances, in reviewing Author Defendants' Motion to Dismiss.

Exhibit 6 is a copy of the complaint filed in state court. (RJN 2, Exh. 6.) In this regard, it is well established that documents filed in other courts are subject to judicial notice pursuant to Federal Rule of Evidence 201, as they cannot be subject to reasonable dispute. Lee, 250 F. 3d at 688-89; Fed. R. Ev*Id.* 201(b)(2). The Court, therefore, will consider this exhibit in reviewing Author Defendants' Motion to Dismiss.

Exhibits 7 and 8 are two articles from separate medical journals.  (RJN 2, Exhs 7 and 8.) Although the documents are not mentioned in the Complaint, and Author Defendants do not specifically reference Exhibit 8 in their Motion to Dismiss, Plaintiff does not dispute their authenticity. The Court, therefore, will consider these exhibits, to the extent appropriate under the circumstances, in reviewing Author Defendants' Motion to Dismiss

**B.     Personal Jurisdiction**

Author Defendants contend that this Court does not have either general or specific personal jurisdiction over them in this matter, arguing that Plaintiff has not met its burden of proof, or alternatively, that they have overcome the presumption that jurisdiction is reasonable. Plaintiff opposes, arguing that this Court can exercise specific jurisdiction over Author Defendants.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. FED. R. CIV. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1155; *see Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 150, 161 (9th Cir. 2007).

There are two types of personal jurisdiction: general and specific. General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgewick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities give rise to the action before the court. *See Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001). The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

Author Defendants challenge the first and third prongs of the specific jurisdiction test. First, Author Defendants dispute that they purposefully directed their activities towards California. Second, Author Defendants contend that any exercise of personal jurisdiction over them would be unreasonable.

Under the first prong of the specific jurisdiction test, the plaintiff must establish that the defendants either purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California. *See Schwarzenegger*, 374 F.3d at 802. The Court of Appeals for the Ninth Circuit has noted that purposeful availment and purposeful direction are two distinct concepts. *Id.* "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (internal citations omitted). In this case, Plaintiff's claims – libel per se; libel per quod; trade libel; and unlawful, fraudulent, and/or unfair business practices – sound primarily in tort.

In analyzing purposeful direction, the Court applies the "effects" test first established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at

803. Under this test, "'the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 803). In this circuit, "the 'brunt' of the harm need not be suffered in the forum state . . . [so long as a] jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo!*, 433 F.3d at 1207.

The first prong of the Calder effects test requires an intentional act, which refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Author Defendants committed an intentional act when they co-authored and published the allegedly libelous Article. The Court concludes that the *Calder* intentional act requirement is satisfied.

The second prong addresses whether the Author Defendants expressly aimed their conduct at the forum. The Ninth Circuit has explained that "'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805; that "something more" is what the Supreme Court described as "express aiming at the forum state." *See Pebble Beach*, 453 F.3d at 1156 (quoting *Bancroft*, 223 F.3d at 1087).

Based on previous cases in this circuit, the "express aiming" requirement is met when wrongful conduct is (1) targeted at a plaintiff (2) whom the defendant knows to be a resident of the forum state, and (3) is directed at residents of the forum state. *See Bancroft*, 223 F.3d at 1087 (holding that the "[express aiming] requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *Schwarzenegger*, 374 F.3d at 807 (finding that knowledge of the Plaintiff's presence in the forum state is not sufficient to establish personal jurisdiction when the audience targeted is exclusively outside the forum state). The third requirement will vary in application with the type of tort involved. However, in the case of libel, it requires that the allegedly libelous

statement be circulated in the forum state. *See Calder*, 465 U.S. 783 (finding jurisdiction where there was extensive circulation in forum state); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (finding jurisdiction where there was worldwide circulation, including within the forum state); *Gordy v. Daily News, L.P.*, 95 F.3d 829, 834 (9th Cir. 1996) (finding jurisdiction where there was concentrated circulation in New York region, with minimal circulation in the forum state); *Cas. Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 599 (9th Cir. 1992) (finding no jurisdiction where there was no circulation the forum state).

As an example of "express aiming," *Calder* concerned a libel action brought by an entertainer against two employees of the National Enquirer for an article published about the plaintiff. The article specifically targeted the plaintiff because it concerned activities that "impugned [her] professionalism." 465 U.S. at 788. The defendants knew that the plaintiff was a "California resident" as the article discussed her "California activities" and "was drawn from California sources." *Id.* Finally, the article was published in the "National Enquirer [which] has its largest circulation" in California. *Id.* at 790. Thus, each of the elements for express aiming was satisfied.

Subsequent cases in this circuit are consistent with these requirements. In *Dillon*, the Ninth Circuit found no jurisdiction over the Indiana Insurance Commissioner for the allegedly libelous letters he sent to healthcare providers notifying them that the plaintiff, Casualty Assurance Risk Insurance Brokerage Co. ("CARIB"), "had been enjoined and that CARIB's Certificate of Authority had been revoked pending a hearing." 976 F.2d at 598. The Court noted that *Calder* made clear that "circulation of the defamatory material in the forum state is an important factor in the minimum contacts analysis for a defamation action." *Id.* at 599. Therefore, although the letters directly targeted the plaintiff, because the letters were not circulated in the forum state, the court held that there was no jurisdiction. *Id.* at 599, 601.

Similarly, in *Schwarzenegger,* the Court found that express aiming was not met because there was no circulation in the forum state. 374 F.3d at 807. An Ohio car dealership ran advertisements targeted solely at Ohio residents, featuring Schwarzenegger as the Terminator. *Id.* Despite the fact that defendant "may have known that Schwarzenegger lived in California,"

because the advertisement was not run in California, and did not target California residents, the court held that California did not have jurisdiction. *Id.*

The Ninth Circuit found jurisdiction over the defendants in *Gordy*. Plaintiff Gordy, a California resident, brought a defamation action against a New York newspaper and its columnist. 95 F.3d at 833. The Court noted that the "alleged libel, . . . was of a nature that clearly would have a severe impact on Gordy as an individual." 95 F.3d at 833. Further, the *Gordy* Court stated that the "prime targeting arises . . . from the fact that Gordy is an individual who lives in California, not a corporation incorporated there and doing business either elsewhere or everywhere." *Id.*

The defendants in *Gordy* also argued that the minimal circulation of the newspaper in California was not sufficient to confer jurisdiction. *Id.* at 833. The Court rejected this argument, distinguishing *Dillon*, where "[t]here had been no distribution of the alleged libel in [the forum]." *Id.* Although the newspapers circulation in California was limited to 13 to 18 copies, representing 0.0017% of its total circulation, the Court found this was sufficient to establish personal jurisdiction over the defendants. *Id.* at 831, 834.

Finally, *Core-Vent* was a case brought by a California corporation against Swedish doctors for an allegedly libelous article published in an international medical journal, with circulation in California. 11 F.3d at 1483-84. The article compared dental implants made by the plaintiff, Core-Vent, and its direct competitor, Nobelpharma AB, a Swedish company with which the defendants were allegedly affiliated. *Id.* at 1484. However, there was no allegation that the "product reached the doctors other than through the stream of commerce." *Id.* at 1486. Looking at the three requirements outlined above, the *Core-Vent* court found the express aiming requirement met. First, the defendants solely targeted the plaintiff by comparing the plaintiff's product to that of a competitor's product. *Id.* at 1484. Second, the plaintiff alleged that the defendants were aware of the plaintiff's presence in California. *Id.* at 1487. Third, the article was published in an international journal with circulation in California. *Id.* at 1484. Although the Court ultimately found that "the exercise of jurisdiction would be unreasonable," it assumed "that purposeful availment prong has been satisfied." *Id.* at 1487.

Turning to the case before the Court, plaintiff has failed to show that Author Defendants expressly targeted Plaintiff. In *Calder*, the article focused on the plaintiff and her activities in the forum state. 465 U.S. at 788. In *Dillon*, the defendant sent letters to healthcare providers notifying them that the plaintiff "had been enjoined and that [its] Certificate of Authority had been revoked pending a hearing." 976 F.2d at 598. In *Schwarzenegger*, the advertisements featured Schwarzenegger as the Terminator. 374 F.3d at 807. In *Gordy*, the alleged libel "was of a nature that clearly would have a severe impact on Gordy as an individual." 95 F.3d at 833. In *Core-Vent*, the article compared dental implants made by the plaintiff, Core-Vent, and its direct competitor, Nobelpharma AB, a Swedish company with which the defendants were allegedly affiliated. 11 F.3d at 1484. In each of these cases, the focal point of the printed material was the plaintiff in a particular forum. However, in this case, the Article includes only a single sentence mentioning the Presage assay and Critical Diagnostics. (Article at 2.) The focus of the Article clearly is not Plaintiff, or the Presage Assay, but rather the potential application of ST2 as a biomarker for use in the general population based on results from the Dallas Heart Study. (*Id.*) Neither the Alere ST2 Assay nor the Presage Assay is currently approved for use in the general population. (Opp'n 4.) Therefore, it is unreasonable to conclude that the Article was expressly aimed at Plaintiff or the Presage Assay. Additionally, unlike *Core-Vent*, where the authors of the article were allegedly affiliated with the plaintiff's competitor, there is no allegation in this case that Author Defendants are affiliated with any of Plaintiff's competitors. (See generally Compl.) Thus, it is unreasonable to infer that Author Defendants had any motive to disparage Plaintiff's product. Moreover, Plaintiff relies on a comment from a single, unidentified, peer reviewer to support its assertion that the average reader of the Article would associate it with Plaintiff. (Opp'n 13-14.) However, a comment during the peer review process by an individual is speculative and is not sufficient to prove this assertion.

Plaintiff has failed to demonstrate that Author Defendants expressly aimed their conduct at the forum, *i.e.*, the targeting requirement has not been met. Therefore, plaintiff has failed to make a prima facie case that the assertion of specific jurisdiction over Author Defendants is constitutional.

Additionally, the second requirement, that the Author Defendants were aware of Plaintiff's presence in the forum state, must be determined for each of the Author Defendants separately. Although Plaintiff seeks to capture all Author Defendants under an imputed knowledge theory, Plaintiff offers no legal basis for this theory and the Court is unaware of any. Furthermore, it is well established that "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790.

Plaintiff alleges that only three of the Author Defendants had actual knowledge of Plaintiff's connection to California, specifying Chen, de Lemos, and Rohatgi. (Opp'n 14-15.) Therefore, even if Plaintiff could show that the first requirement of targeting or express aiming had been satisfied, Plaintiff would still be unable to support the second requirement for defendants Ayers and Das. Both Ayers and Das indicate that they were "not aware that Critical Care Diagnostics, Inc. is based in California." (Ayers Decl. ¶ 7; Das Decl.¶ 7.) Therefore, Plaintiff has failed to make a prima facie case that the assertion of specific jurisdiction over the defendants Ayers and Das is constitutional.

Because Plaintiff failed to meet its burden under the express aiming prong of the *Calder* effects test, the Court finds that Author Defendants did not purposefully direct their activities at California. Thus, the Court need not consider the remaining elements, or the reasonableness of jurisdiction. Likewise, the Court need not consider Author Defendants' alternative Motion to Dismiss for Failure to State a Claim or Author Defendants' pending Motion to Dismiss Plaintiff's Complaint Pursuant to Texas Civil Practice and Remedies Code [doc. 38].

**IV. CONCLUSION**

In light of the foregoing, **IT IS ORDERED**:

1. Author Defendants' Request for Judicial Notice is **GRANTED**;

2. Author Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) is **GRANTED** [doc. 19];

3. Author Defendants' alternative Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is **DENIED** as moot;

4. Author Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Texas

Civil Practice and Remedies Code is **DENIED** as moot. [doc. 38]

     5.    The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

DATED: March 4, 2014

                                                                      *M. James Lorenz* (signature)
M. James Lorenz
United States District Court Judge

COPY TO:

HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL